# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: RICHARD K. EATON, JUDGE**

|  |  |
|---|---|
| **MARCK AND ASSOCIATES, INC.,** | **COURT NUMBER** |
| **PLAINTIFF,** | **08-00306** |
| **v.** | |
| **THE UNITED STATES,** | |
| **DEFENDANT.** | |

## JUDGMENT ORDER

Upon reading plaintiff's motion for summary judgment in the above-captioned case, and upon other papers and proceedings had herein, it is hereby;

**ORDERED**, that plaintiff's motion for summary judgment is granted and that the entries herein be reliquidated with refunds, plus interest at the statutory rate.

RICHARD K. EATON, JUDGE

Dated:  New York, New York

This ___ day of _____, 2013

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE RICHARD K. EATON, JUDGE

|  | X |  |
|---|---|---|
| MARCK AND ASSOCIATES, INC. | : | |
| PLAINTIFF, | : | |
| | : | |
| v. | : | COURT NUMBER |
| | : | |
| THE UNITED STATES, | : | 08-00306 |
| | : | |
| DEFENDANT. | : | |
|  | X | |

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, the United States, moves for summary judgment pursuant to Rule 56 of the Rules of the United States Court of International Trade on the grounds that there are no genuine material issues of fact to be tried and that, as set forth in the memorandum accompanying this motion, the Government is entitled to summary judgment as a matter of law.

**WHEREFORE,** plaintiff respectfully moves this Court to enter an order granting defendant's motion for summary judgment and dismissing this action.

Respectfully submitted,
/S/

Edmund Maciorowski
101 West Long Lake Road
Bloomfield Hills, MI 48304
(248) 646-6771

**ATTORNEY FOR PLAINTIFF**
Marck & Associates, Inc.
300 Phillips Avenue
Toledo, OH 43612

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: HONORABLE RICHARD K. EATON, JUDGE**

| | |
|---|---|
| ──────────────────────────── X | |
| **G. G. MARCK AND ASSOCIATES, INC.** : | |
| **PLAINTIFF,** : | |
| : | 08-00306 |
| **v.** : | |
| : | |
| : | |
| **THE UNITED STATES,** : | |
| : | |
| **DEFENDANT.** : | |
| : | |
| ──────────────────────────── X | |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE ARE NO GENUINE ISSUES TO BE TRIED**

1.  Plaintiff is the importer of record of the merchandise covered by the entries herein.

    [Complaint ¶ 1; Answer ¶ 1] [Official Record]


2.  The entries herein were the subject of timely filed protests. [Complaint ¶ 2; Answer ¶ 2]

    [Official Record]


3.  All liquidated duties have been paid. [Complaint ¶ 3; Answer ¶ 3]

## I.  Ceramic Articles.

4.      The subject articles are shaped. [Complaint ¶ 5; Answer ¶ 5]

5.      The subject articles have a glazed body.  [Complaint ¶ 6; Answer ¶ 6] [Defendant's

Supplemental Response to Request for Admissions ¶ 2  (Hereinafter "RFA") (Exhibit 1)]

[Appendix 1 -- Affidavit and Report of William M. Carty, PhD dated May 8, 2013 and

Oct. 30, 2012 respectively (hereinafter CARTY) page 2 paragraph 5, pages 3 and 4 and

supporting materials.]

6.      The subject articles are of crystalline or substantially crystalline structure [Complaint ¶ ¶ 7

& 8; Answer ¶¶ 7 & 8] [email message from J. Kenner to E. Maciorowski dated July 18,

2012 (Exhibit 2)] [Appendix 1 – CARTY, page 2 paragraph 5, pages 3 and 4 and

supporting materials.]

7.      The subject articles are essentially composed of inorganic substances. [Complaint ¶ 10;

Answer ¶ 10] [Appendix 1 – CARTY, page 2 paragraph 5, pages 3 and 4 and supporting

materials.]

8.      The subject articles are essentially composed of non-metallic substances. [Complaint ¶

12; Answer ¶ 12] [Appendix 1 – CARTY, page 2 paragraph 5, pages 3 and 4 and

supporting materials.]

9.      The subject articles are formed by heat treatment. [Complaint ¶ 14; Answer ¶ 14] [Appendix 1 – CARTY, page 2 paragraph 5, pages 3 and 4 and supporting materials.]

10.     The subject articles are hardened by heat treatment. [Complaint ¶ 15; Answer ¶ 15] [Appendix 1 – CARTY, page 2 paragraph 5, pages 3 and 4 and supporting materials.]

11.     The subject articles are not more dense after reheating to pyrometric cone 020. [Complaint ¶ 16; Answer ¶ 16] [Appendix 1 – CARTY, page 2 paragraph 5, pages 3 and 4 and supporting materials.]

12.     The subject articles are not harder after reheating to pyrometric cone 020. [Complaint ¶ 17; Answer ¶ 17] [Appendix 1 – CARTY, page 2 paragraph 5, pages 3 and 4 and supporting materials.]

13.     The subject articles are not glass. [Complaint ¶ 19; Answer ¶ 19] [Appendix 1 – CARTY, page 2 paragraph 5, pages 3 and 4 and supporting materials.]

14.     The subject articles are ceramic mugs and cups. [Complaint ¶ 4; Answer ¶ 4] [Defendant's Response to RFA ¶ 1 (Exhibit 3)] [Appendix 1 – CARTY, page 2 paragraph 5, pages 3 and 4 and supporting materials.]

## II.   Tableware

15.   The subject articles are used on the table. [Complaint ¶ 20; Answer ¶ 20]

16.   The subject articles are tableware. [Complaint ¶ 21; Answer ¶ 21]

17.   The subject articles are used for serving or storing food or beverages. [Complaint ¶ 22; Answer ¶ 22]

18.   The use of the subject articles for serving or storing food or beverage exceeds all other uses. [Complaint ¶ 23; Answer ¶ 23]

## III. Articles Descriptions

19.   The subject articles consist of style numbers 1015, 7168, 286, 39, 3476, 414, 481, 67, 803, 4110, 1209, 1776, 212, 3414, 1376, 1950, 209, 7101, 1276, 81015, 617, 5176 [Official Record Invoice Nos. NT-06/3560A; NT-06/3570A; NT-06/06/3575A; NT-06/3592A; NT-06/35331A; NT-06/3545A] [Affidavit of Raymond Guan ¶ 8 (hereinafter GUAN) (Exhibit 4)]

20.   The shape and design of The Marck Cancun dinnerware line is consistent with the pattern of the Huaguang HG 9801 Dinner set series. [GUAN ¶ 9] [N Appendix 2 -- Affidavit of

Curtis Fahnert ¶¶ D pages 4 and 5 (hereinafter FAHNERT)] [Appendix 3 -- Affidavit of

John Conrad ¶¶ D pages 4 and 5 (hereinafter CONRAD)] [GUAN ¶ 9].

21.     The subject articles are consistent with and designed for use in "Cancun Pattern."

## A.     Item 1015

22.     Invoice items numbered 1015 are "El Grande" stoneware mugs manufactured by

Huaguang Ceramics Company Ltd. ("hereinafter Huaguang"), [GUAN, ¶ 8 identifying

Invoice nos: NT-06/3560A, NT-06/3575A, NT-06/3592A, NT-06/3531A, NT-06/3545A]

[Official Record].

23.     Each El Grande mug has a fluid capacity of 15 ounces, a height of 4 ½ inches and a

diameter of 3 1/8 inches. [FAHNERT, ¶ II. E. 1, p. 5, 6] [CONRAD ¶ II. E.1, p. 6].

24.     The upper rim is a rolled edge and the bottom is an ovolo profile; the body is otherwise

cylindrical with a "c" shaped handle. [FAHNERT, ¶ II. E. 1, p. 5, 6] [CONRAD ¶ II. E.1,

p. 6].

25.     Each El Grande mug is consistent with and is in the same pattern as the Cancun

dinnerware line. [FAHNERT, ¶ II. E. 1, p. 5, 6] [CONRAD ¶ II. E.1, p. 6].

## B. Item  7168

26.     Invoice items numbered 7168 are "3 Finger Handle Mug" stoneware mugs manufactured by Huaguang, [GUAN, ¶ 8 identifying Invoice nos: NT-06/3560A, NT-06/3570A, NT-06/3575A, NT-06/3592A, NT-06/3531A, NT-06/3545A] [Official Record].

27.     Each 3 Finger Handle Mug has a fluid capacity of 11 ounces, a height of 3 11/16 inches and a diameter of 3 1/8 inches. [FAHNERT, ¶ II. E. 2, p. 6] [CONRAD ¶ II. E. 2, p. 7].

28.     The upper rim is a rolled edge and the bottom is a rolled edge; the body is otherwise cylindrical with a "c" shaped handle. [FAHNERT, ¶ II. E. 2, p. 6] [CONRAD ¶ II. E. 2, p. 7].

29.     Each 3 Finger Handle Mug is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 2, p. 6] [CONRAD ¶ II. E. 2, p. 7].

## C. Item 286

30.     Invoice items numbered 286 are "Houston Cup" stoneware mugs manufactured by Huaguang, [GUAN, ¶ 8 identifying Invoice nos: NT-06/3570A, NT-06/3575A, NT-06/3592A, NT-06/3531A] [Official Record].

31.   Each Houston Cup has a fluid capacity of 16 ounces, a height of 4 ¾ inches and a diameter of 3 ½ inches at the top and 2 ½ inches at the bottom. [FAHNERT, ¶ II. E. 3, p. 6] [CONRAD ¶ II. E. 3 p. 7].

32.   The upper rim is a rolled edge and the bottom is a rolled edge profile; the body is otherwise cylindrical and tapered with a "c" shaped handle. [FAHNERT, ¶ II. E. 3, p. 6] [CONRAD ¶ II. E. 3 p. 7].

33.   Each Houston Cup is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 3, p. 6] [CONRAD ¶ II. E. 3 p. 7].

## D. Item 39

34.   Invoice items numbered 39 are "Tulsa Funnel Cup" stoneware mugs manufactured by Huaguang, [GUAN, ¶ 8 identifying Invoice nos: NT-06/3570A, NT-06/3531A] [Official Record].

35.   Each Tulsa Funnel Cup mug has a fluid capacity of 12 ounces, a height of 4 inches and a diameter of 3 ½ inches at the top and 2 5/16 inches at the bottom. [FAHNERT, ¶ II. E. 4, p. 7] [CONRAD ¶ II. E. 4, p. 8].

36.     The upper rim is a rolled edge and the bottom is a rolled edge; the body is otherwise cylindrical and tapered with a "c" shaped handle. [FAHNERT, ¶ II. E. 4, p. 7] [CONRAD ¶ II. E. 4, p. 8].

37.     Each Tulsa Funnel Cup is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 4, p. 7] [CONRAD ¶ II. E. 4, p. 8].

### E. Item 3476

38.     Invoice items numbered 3476 are "Heartland Bistro Cup" stoneware mugs manufactured by Huaguang, [GUAN, ¶ 8 identifying Invoice nos: NT-06/3570A, NT-06/3545A] [Official Record].

39.     Each Heartland Bistro Cup has a fluid capacity of 14 ounces, a height of 4 inches and a diameter of 3 9/16 inches at the top and 2 inches at the bottom. [FAHNERT, ¶ II. E. 5, p. 7] [CONRAD ¶ II. E. 5, p. 8].

40.     The upper rim is a rolled edge and the bottom is a cavetto profile with a rolled edge; the body is otherwise cylindrical and tapered with a "c" shaped handle. [FAHNERT, ¶ II. E. 5, p. 7] [CONRAD ¶ II. E. 5, p. 8].

41.   Each Heartland Bistro Cup is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 5, p. 7] [CONRAD ¶ II. E. 5, p. 8].

## F. Item 414

42.   Invoice items numbered 414 are "Milwaukee Barrel" stoneware mugs manufactured by Huaguang, [GUAN, ¶ 8 identifying Invoice nos: NT-06/3570A, NT-06/3531A, NT-06/3545A] [Official Record].

43.   Each Milwaukee Barrel mug has a fluid capacity of 16 ounces, a height of 5 1/16 inches and a diameter of 3 1/8 inches. [FAHNERT, ¶ II. E. 6, p. 7,8] [CONRAD ¶ II. E. 6, p. 9].

44.   The upper rim is a rolled edge and the bottom is a rolled edge; the body is otherwise cylindrical and barrel-shaped with a "D" shaped handle. [FAHNERT, ¶ II. E. 6, p. 7,8] [CONRAD ¶ II. E. 6, p. 9].

45.   Each Milwaukee Barrel Mug is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 6, p. 7,8] [CONRAD ¶ II. E. 6, p. 9].

## G. Item 481

46.   Invoice items numbered 481 are "Canaveral Cup" stoneware mugs manufactured by

Huaguang, [GUAN, ¶ 8 identifying Invoice nos: NT-06/3570A, NT-06/3575A, NT-06/3592A] [Official Record].

47.   Each Canaveral Cup has a fluid capacity of 12.5 ounces, a height of 4 3/8 inches and a diameter of 3 3/8 inches at the top and 2 3/8 inches at the bottom. [FAHNERT, ¶ II. E. 7, p. 8] [CONRAD ¶ II. E. 7, p. 9].

48.   The upper rim is a rolled edge and the bottom is a rolled edge; the body is otherwise cylindrical and tapered with a "c" shaped handle. [FAHNERT, ¶ II. E. 7, p. 8] [CONRAD ¶ II. E. 7, p. 9].

49.   Each Canaveral Cup is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 7, p. 8] [CONRAD ¶ II. E. 7, p. 9].

### H. Item 67

50.   Invoice items numbered 67 are "Topeka Funnel Cup" stoneware mugs manufactured by Huaguang [GUAN, ¶ 8 identifying Invoice nos: NT-06/3570A, NT-06/3575A, NT-06/3592A, NT-06/3531A; NT-06/3545A] [Official Record].

51.   Each Topeka Funnel Cup has a fluid capacity of 16 ounces, a height of 6 inches and a diameter of 3 3/8 inches at the top and 2 ¼ inches at the bottom. [FAHNERT, ¶ II. E. 8,

p. 8] [CONRAD ¶ II. E. 8, p. 10 ].

52. The upper rim is a rolled edge and the bottom is a rolled edge; the body is otherwise cylindrical and tapered with a "c" shaped handle. [FAHNERT, ¶ II. E. 8, p. 8] [CONRAD ¶ II. E. 8, p. 10 ].

53. Each Topeka Funnel Cup is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 8, p. 8] [CONRAD ¶ II. E. 8, p. 10 ].

## I.     Item 803

54. Invoice items numbered 803 are "Spokane Barrel Mug" stoneware mugs manufactured by Huaguang [GUAN, ¶ 8 identifying Invoice nos: NT-06/3575A, NT-06/3531A, NT-06/3570A] [Official Record].

55. Each Spokane Barrel Mug has a fluid capacity of 16 ounces, a height of 4 1/8 inches and a diameter of 3 ¼ inches at the top and 3 ¾ inches at the bottom. [FAHNERT, ¶ II. E. 9, p. 9] [CONRAD ¶ II. E. 9, p. 10].

56. The upper rim is a cavetto profile with a rolled edge and the bottom is an ovolo profile with a rolled edge; the body is otherwise cylindrical and barrel shaped with a "c" shaped handle. [FAHNERT, ¶ II. E. 9, p. 9] [CONRAD ¶ II. E. 9, p. 10].

57.     Each Spokane Barrel Mug is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 9, p. 9] [CONRAD ¶ II. E. 9, p. 10].

## J. Item 4110

58.     Invoice items numbered 4110 are "Denver Lightweight Mug" stoneware mugs manufactured by Huaguang [GUAN, ¶ 8 identifying Invoice no: NT-06/3570A] [Official Record].

59.     Each Denver Lightweight Mug has a fluid capacity of 11 ounces, a height of 3 ½ inches and a diameter of 3 ½ inches at the top and 3 3/8 inches at the bottom. [FAHNERT, ¶ II. E. 10, p. 9] [CONRAD ¶ II. E. 10, p. 11].

60.     The upper rim is a rolled edge and the bottom is a rolled edge; the body is otherwise cylindrical with a "c" shaped handle. [FAHNERT, ¶ II. E. 10, p. 9] [CONRAD ¶ II. E. 10, p. 11].

61.     Each Denver Lightweight Mug is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 10, p. 9] [CONRAD ¶ II. E. 10, p. 11].

## K. Item 1209

62.     Invoice items numbered 1209 are "Sante Fe Campfire Mug" stoneware mugs manufactured by Huaguang [GUAN, ¶ 8 identifying Invoice nos: NT-06/3575A, NT-06/3592A] [Official Record].

63.     Each  Sante Fe Campfire Mug has a fluid capacity of 15 ounces, a height of 3 ½ inches and a diameter of 3 15/16 inches at the top and 3 ½ inches at the bottom. [FAHNERT, ¶ II. E. 11, p. 10 ] [CONRAD ¶ II. E., p. 11].

64.     The upper rim is a cavetto profile with a rolled edge and the bottom is a rolled edge; the body is otherwise cylindrical with a "c" shaped handle. [FAHNERT, ¶ II. E. 11, p. 10 ] [CONRAD ¶ II. E., p. 11].

65.     Each Sante Fe Campfire Mug is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 11, p. 10 ] [CONRAD ¶ II. E., p. 11].

## L. Item 1776

66.     Invoice items numbered 1776 are "Heartland Bistro Cup" stoneware mugs manufactured by Huaguang [GUAN, ¶ 8 identifying Invoice nos: NT-06/3575A, NT-06/3545A] [Official Record].

67.     Each Huaguang Heartland Bistro Cup has a fluid capacity of 14 ounces, a height of 4 inches and a diameter of 3 5/8 inches at the top and 2 1/8 inches at the bottom. [FAHNERT, ¶ II. E. 12, p. 10] [CONRAD ¶ II. E. 12, p. 12].

68.     The upper rim is a rolled edge and the bottom is a cyma profile with a rolled edge; the body is otherwise cylindrical and tapered shaped with a "c" shaped handle. [FAHNERT, ¶ II. E. 12, p. 10] [CONRAD ¶ II. E. 12, p. 12].

69.     Each Heartland Bistro Cup is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 12, p. 10] [CONRAD ¶ II. E. 12, p. 12].

## M. Item 212

70.     Invoice items numbered 212 are "New York Barrel Mug" stoneware mugs manufactured by Huaguang [GUAN, ¶ 8 identifying Invoice nos: NT-06/3575A, NT-06/3592A, NT-06/3531A, NT-06/3545A] [Official Record].

71.     Each New York Barrel Mug has a fluid capacity of 16 ounces, a height of 4 5/8 inches and a diameter of 3 ½ inches at the top and 2 3/8 inches at the bottom. [FAHNERT, ¶ II. E. 13, p. 11] [CONRAD ¶ II. E. 13, p.12].

72.     The upper rim is a rolled edge and the bottom is a rolled edge; the body is otherwise

cylindrical and barrel shaped with a "c" shaped handle. [FAHNERT, ¶ II. E. 13, p. 11] [CONRAD ¶ II. E. 13, p.12].

73.   Each New York Barrel Mug is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 13, p. 11] [CONRAD ¶ II. E. 13, p.12].

## N. Item 3414

74.   Invoice items numbered 3414 are "C Handle Mug" stoneware mugs manufactured by Huaguang [GUAN, ¶ 8 identifying Invoice nos: NT-06/3575A, NT-06/3545A] [Official Record].

75.   Each C Handle Mug has a fluid capacity of 13 ounces, a height of 3 7/8 inches and a diameter of 3 ¼ inches. [FAHNERT, ¶ II. E. 14, p. 11] [CONRAD ¶ II. E. 14, p. 13].

76.   The upper rim is a rolled edge and the bottom is a rolled edge; the body is otherwise cylindrical and barrel shaped with a "c" shaped handle. [FAHNERT, ¶ II. E. 14, p. 11] [CONRAD ¶ II. E. 14, p. 13].

77.   Each C Handle Mug is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 14, p. 11] [CONRAD ¶ II. E. 14, p. 13].

## O. Item 1376

78.     Invoice items numbered 1376 are "St. Paul Bistro Mug" stoneware mugs manufactured by Huaguang [GUAN, ¶ 8 identifying Invoice nos: NT-06/3531A] [Official Record].

79.     Each St. Paul Bistro Mug has a fluid capacity of 16 ounces, a height of 4 1/8 inches and a diameter of 3 5/8 inches at the top and 2 1/8 inches at the bottom. [FAHNERT, ¶ II. E. 15, p. 11, 12] [CONRAD ¶ II. E. 15, p. 13].

80.     The upper rim is a rolled edge and the bottom is a rolled edge; the body is otherwise cylindrical and tapered in shape with a "c" shaped handle. [FAHNERT, ¶ II. E. 15, p. 11, 12] [CONRAD ¶ II. E. 15, p. 13].

81.     Each St. Paul Bistro Mug is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 15, p. 11, 12] [CONRAD ¶ II. E. 15, p. 13].

## P. Item 1950

82.     Invoice items numbered 1950 are "The Cleveland Mocha Mug" stoneware mugs manufactured by Huaguang [GUAN, ¶ 8 identifying Invoice nos: NT-06/3531A, NT-06/3545A] [Official Record].

83.     Each Cleveland Mocha Mug has a fluid capacity of 20 ounces, a height of 4 3/8 inches

        and a diameter of 4 1/8 inches at the top and 2 5/8 inches at the bottom. [FAHNERT, ¶ II.

        E. 16, p. 12] [CONRAD ¶ II. E. 16, p. 14].

84.     The upper rim is a rolled edge and the bottom is a rolled edge; the body is otherwise

        cylindrical and tapered with a "c" shaped handle. [FAHNERT, ¶ II. E. 16, p. 12]

        [CONRAD ¶ II. E. 16, p. 14].

85.     Each Cleveland Mocha Mug is consistent with and is in the same pattern as the Cancun

        dinnerware line. [FAHNERT, ¶ II. E. 16, p. 12] [CONRAD ¶ II. E. 16, p. 14].

## Q. Item 209

86.     Invoice items numbered 209 are "Savannah, Savannah Endeavor Cup" stoneware mugs

        manufactured by Huaguang [GUAN, ¶ 8 identifying Invoice nos: NT-06/3570A, NT-

        06/3531A, NT-06/3545A] [Official Record].

87.     Each Savannah Endeavor Cup has a fluid capacity of 13 ounces, a height of 4 ½ inches

        and a diameter of 3 3/8 inches at the top and 2 1/8 inches at the bottom. [FAHNERT, ¶ II.

        E. 17, p. 12, 13] [CONRAD ¶ II. E. 17, p. 14].

88.     The upper rim is a rolled edge and the bottom is a rolled edge; the body is otherwise

cylindrical and tapered with a "c" shaped handle. [FAHNERT, ¶ II. E. 17, p. 12, 13] [CONRAD ¶ II. E. 17, p. 14].

89.     Each Savannah Endeavor Cup is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 17, p. 12, 13] [CONRAD ¶ II. E. 17, p. 14].

### R.  Item 7101

90.     Invoice items numbered 7101 are "Titan Mug" stoneware mugs manufactured by Huaguang [GUAN, ¶ 8 identifying Invoice no: NT-06/3531A] [Official Record].

91.     Each Huaguang Titan Mug has a fluid capacity of 10 ounces, a height of 3 ¾ inches and a diameter of 3 inches. [FAHNERT, ¶ II. E. 18, p. 13] [CONRAD ¶ II. E. 18, p. 15].

92.     The upper rim is a cavetto profile with a rolled edge and the bottom rim is an ogee profile with a rolled edge; the body is otherwise cylindrical with a squared handle with a short upper arm and a long lower arm. [FAHNERT, ¶ II. E. 18, p. 13] [CONRAD ¶ II. E. 18, p. 15].

93.     Each Titan Mug is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 18, p. 13] [CONRAD ¶ II. E. 18, p. 15].

### S.  Item 1276

94.     Invoice items numbered 1276 are "Santa Fe Bistro Mug" stoneware mugs manufactured by Huaguang [GUAN, ¶ 8 identifying Invoice no: NT-06/3531A] [Official Record].

95.     Each Huaguang Santa Fe Bistro Mug has a fluid capacity of 16 ounces, a height of 4 1/8 inches and a diameter of 3 5/8 inches at the top and 2 1/8 at the bottom. [FAHNERT, ¶ II. E. 19, p. 13] [CONRAD ¶ II. E. 19, p. 15, 16].

96.     The upper rim is a rolled edge and the bottom rim is a cavetto profile with a rolled edge; the body is otherwise cylindrical and tapered in shape with a "c" shaped handle. [FAHNERT, ¶ II. E. 19, p. 13] [CONRAD ¶ II. E. 19, p. 15, 16].

97.     Each Santa Fe Bistro Mug is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 19, p. 13] [CONRAD ¶ II. E. 19, p. 15, 16].

### T.  Item  81015

98.     Invoice items numbered 81015 are "Cancun El Grande Mug" stoneware mugs manufactured by Huaguang [GUAN, ¶ 8 identifying Invoice no: NT-06/3545A] [Official Record].

99.   Each Cancun El Grande Mug has a fluid capacity of 13 ounces, a height of 4 ½ inches and a diameter of 3 1/8 inches. [FAHNERT, ¶ II. E. 20, p. 14] [CONRAD ¶ II. E. 20, p. 16].

100.   The upper rim is a rolled edge and the bottom is an ovolo profile with a rolled edge; the body is otherwise cylindrical with a "c" shaped handle. [FAHNERT, ¶ II. E. 20, p. 14] [CONRAD ¶ II. E. 20, p. 16].

101.   Each Cancun El Grande Mug is consistent with and is in the same pattern as the Cancun dinnerware line. [FAHNERT, ¶ II. E. 20, p. 14] [CONRAD ¶ II. E. 20, p. 16].

## U. Item 617

102.   Invoice items numbered 617 are "Boston Irish Coffee Mug" stoneware mugs manufactured by Huaguang [GUAN, ¶ 8 identifying Invoice no: NT-06/3545A] [Official Record].

103.   Each Huaguang Boston Irish Coffee Mug has a fluid capacity of 10 ounces, a height of 4 ¼ inches and a diameter of 3 5/16 inches at the top and 2 9/16 inches at the bottom. [FAHNERT, ¶ II. E. 21, p. 14] [CONRAD ¶ II. E. 21, p. 16, 17].

104.   The upper rim is a cavetto profile with a rolled edge and the bottom rim is a rolled edge; the body is otherwise cylindrical and tapered with a "c" shaped handle. [FAHNERT, ¶ II.

E. 21, p. 14] [CONRAD ¶ II. E. 21, p. 16, 17].


105.    Each Boston Irish Coffee Mug is consistent with and is in the same pattern as the Cancun

dinnerware line. [FAHNERT, ¶ II. E. 21, p. 14] [CONRAD ¶ II. E. 21, p. 16, 17].


**V. Item 5176**


106.    Invoice items numbered 5176 are "Heartland Bistro Cup" stoneware mugs manufactured

by Huaguang [GUAN, ¶ 8 identifying Invoice no: NT-06/3545A] [Official Record].


107.    Each Huaguang Heartland Bistro Cup has a fluid capacity of 14 ounces, a height of 4

inches and a diameter of 3 9/16 inches at the top and 2 inches at the bottom. [FAHNERT,

¶ II. E. 22, p. 14, 15] [CONRAD ¶ II. E. 22, p. 14, 15].


108.    The upper rim is a rolled edge and the bottom rim is a ogee profile with a rolled edge; the

body is otherwise cylindrical and tapered in shape with a "c" shaped handle. [FAHNERT,

¶ II. E. 22, p. 14, 15] [CONRAD ¶ II. E. 22, p. 14, 15].


109.    Each Heartland Bistro Cup is consistent with and is in the same pattern as the Cancun

dinnerware line. [FAHNERT, ¶ II. E. 22, p. 14, 15] [CONRAD ¶ II. E. 22, p. 14, 15].

110.    The Cancun pattern is an offering of bold, bright colors. [Miller Dep. At 23, Deposition of John Conrad (hereinafter "Conrad Dep.) at 36; Fahnert Dep. at 42-43]

111.    The principal use of the subject mugs and cups is household use. [3rd Interrogatories. No. 7(b).

112.    The current controversy in this case does not involve the question of principal use. [Letter from J. Kenner to E. Maciorowski dated May 11, 2012].

113.    CA-16-CB Cancun 10 ¼ inch plate is the neatest plate in size to 26.7 cm in maximum dimension. [SRRFA ¶22].

114.    CA-6-CB 6 5/8 inch plate is the plate nearest in size to 15.3 cm. [SRRFA ¶23].

115.    CA-44-CB 7 inch bowl is the bowl nearest in size to 17.8 cm. [SRRFA ¶25].

116.    CA-11-CB ¾ inch fruit bowl is the bowl nearest in size to 12.7 cm. [SRRFA ¶26].

117.    In 2006, CA-14-CB 13 ¼ inch platter was the platter nearest in size to 38.1 cm in maximum dimension. [cite]

118.    CA-45-CB 10 inch bowl is the bowl nearest in size to 25.4 cm. [SRRFA ¶28].

119.    CA-61-CB sugar bowl with lid is the sugar of largest capacity. [SRRFA ¶29].

120.    CA-60-CB creamer is the creamer of largest capacity. [SRRFA ¶30].

121.    The item identified as CA-2-CB is a saucer. [RRRFA ¶24].

122.    CA-1-CB 7 oz. tall cup is a teacup. [cite]

123.    The total fob price, of the 77 articles to be included in the specified set of the Cancun dinnerware line exceeds $38.00 [Affidavit of Raymond Guan].

124.    The Huaguang HG 9801 Dinner Set has been included in marketing catalogues distributed for taking orders since at least May of 2004 and at all times relevant to this proceeding [Affidavit of Raymond Guan¶ 9].

125.    The Huaguang HG 9801 Dinner Set including soups, fruits, platter, large vegetable bowl, creamer, sugar bowl with lid and cereal bowl were available for order manufacture and sale since at least May of 2004 and at all times relevant to this proceeding [Affidavit of Raymond Guan ¶10].

126.    The pattern represented by the HG 9801 dinnerware set including soups fruits platter soups, fruits, platter, large vegetable bowl, creamer, sugar bowl with lid and cereal bowl

were available for order, manufacture and sale in 2006. [Affidavit of Raymond Guan ¶¶

12 thru 21] Each of these and all of them items were actually sold to Marck in 2006

[Affidavit of Raymond Guan ¶6, ¶22].


## IV. THE CANCUN PATTERN


127.    The Cancun Pattern is a dinnerware line of ceramic stoneware.


128.    Marck & Associates, Inc. (hereinafter Marck) is the importer of the dinnerware line in the

cancun pattern including the subject mugs and cups.


129.    Hua Guang is the manufacturer of the dinnerware line in the cancun pattern.


130.    The cancun pattern is characterized by bright bold colors.


131.    The cancun pattern is characterized by rounded rim shapes.


132.    A representative sample of Dinnerware Items imported by Marck in the Cancun pattern

include:

| Item Number | Description |
|---|---|
| a. CA-16-CB | 10 ¼" plate Cancun Cobalt Blue |
| b. CA-6-CB | 6 5/8" plate Cancun Cobalt Blue |

    c. CA-44-CB    7" bowl Cancun Cobalt Blue

    d. CA-11-CB    4 ¾" 4 oz fruit bowl Cancun Cobalt Blue

    e. CA-14-CB    13 ¼" platter Cancun Cobalt Blue

    f. CA-45-CB    10" bowl Cancun Cobalt Blue

    g. CA-61-CB    sugar bowl w/lid Cancun Cobalt Blue

    h. CA-60-CB    14 oz tall cup Cancun Cobalt Blue

    i. CA-2-CB    7 oz tall cup Cancun Cobalt Blue

    j. CA-1-CB    7 oz saucer  Cancun Cobalt Blue

## V. THE SPECIFIED SET

133. CA-16-CB 10 ¼" plate is the nearest plate in size to 26.7 cm in maximum dimension Supplemental Response to Plaintiff's Requests for Admissions hereinafter SRRFA ¶22].

133. CA-6-CB 6 5/8" plate is the plate nearest in size to 15.3 cm [SRRFA, ¶23].

134. CA-44-CB 7" bowl is the bowl nearest in size to 17.8 cm [SRRFA ¶ 25].

135. CA-11-CB 4 ¾" fruit bowl is the bowl nearest in size to 12.7 cm [SRRFA ¶ 26].

136. CA-14-CB 13 ¼" platter was the platter nearest in size to 38.1 cm maximum dimension platter available and Kenner says closer inzixe with 15.5 inch not offered for sale in 2006 [*See* catalog.] [Draft Miller affidavit].

MARCK v. US
Court #08-00306
Page 26 of 26

137.    CA-45-CB 10 inch bowl is the bowl nearest in size to 25.4 cm [SRRFA ¶ 28].

138.    CA-61-CB sugar bowl with lid is the sugar of largest capacity [SRRFA ¶ 29].

139.    CA-60-CB creamer is the creamer of largest capacity [SRRFA ¶ 28].

140.    CA-2-CB is a saucer [SRRFA ¶ 28].

141.    All of the items referenced as included in the specified set above identified are
        characterized by bright bold colors, round rim shapes.

142.    All of the items above identified in the specified set, when color coordinated are included
        in the Cancun Pattern.

143.

# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: RICHARD K. EATON, JUDGE**

| | | |
|---|---|---|
| ———————————————————————— X | | |
| **MARCK AND ASSOCIATES, INC.,** : | | **COURT NUMBER** |
| : | | |
| **PLAINTIFF,** : | | 08-00306 |
| : | | |
| **v.** : | | |
| : | | |
| **THE UNITED STATES,** : | | |
| : | | |
| **DEFENDANT.** : | | |
| ———————————————————————— X | | |

# PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**Bracketing of Confidential Information Not Final For One Business
Day after Date of Filing."**

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: RICHARD K. EATON, JUDGE**

---

|  |  |
|---|---|
|  | X |
| **MARCK AND ASSOCIATES, INC.,** | : |
|  | :     **COURT NUMBER** |
| **PLAINTIFF,** | : |
|  | :     08-00306 |
| **v.** | : |
|  | : |
|  | : |
| **THE UNITED STATES,** | : |
|  | : |
| **DEFENDANT.** | : |
|  | X |

---

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION REQUIREMENT

In accordance with this Court's Standard Chambers Procedure 2(B)(2), this is to
certify that this brief complies with the type-volume limitations described therein.

The brief contains 5,317 words, excluding the parts of the brief exempted by Standard Chambers Procedures 2(B)(1).

Respectfully submitted,

_____/S/_____
Edmund Maciorowski

101 West Long Lake Road
Bloomfield Hills, MI 48304
(248) 646-6771

**ATTORNEY FOR PLAINTIFF:**

Marck & Associates, Inc.
300 Phillips Avenue
Dated: May 16, 2013     Toledo, OH  43612

## TABLE OF CONTENTS

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT..................1

  I. BACKGROUND ...........................................................................................................1

  II. APPLICABLE STATUTORY LANGUAGE....................................................................4

  III. STANDARD OF REVIEW ..........................................................................................6

  IV. THE SUBJECT ARTICLES ARE WITHIN THE SCOPE OF THE TARIFF TERM
"AVAILABLE IN SPECIFIED SETS"...……………………………………………………………7

    A. Specified Sets.………………………………………………………………………8

    B. "Available" in Specified Sets.………………………………………………………....11

    C. The Cancun Pattern Includes Both the Specified Set and the Subject Mugs and
Cups.………………………………………………………………………………………...13

        a. The Tariff Classification Study provides insight into the meaning of the term
"pattern".………………………………………………………………………………13

        b. The Common Meaning of the Tariff Term "Pattern" is consistent with the
views of the Tariff Classification outlined above.………………………………16

        c.Experts agree that bright bold colors and round rim shapes define the Cancun
Pattern.

  V. THE SPECIFIED SETS ARE WITHIN THE SCOPE OF THE TARIFF TERM

"HAVING AN AGGREGATE VALUE OVER $38.00............................................................20

  VI. CONCLUSION.………………………………………………………………………21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)..............................................6

Arthur Humphreys v. United States, 973 F. 2d 1554 (Fed. Cir. 1992). ......................................19

Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998). ...........................7

Boen Hardwood Flooring, Inc. v. United States, 357 F.3d 1262, 1264 (Fed. Cir. 2004). ............11

Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999). ...................................12

Genesco v. United States, 24 CIT 339, 480 (2000). ....................................................................19

Libbey Glass v. United States, 921 F. 2d 1263 (Fed. Cir. 1990)..................................................19

Lynteq, Inc. v. United States, 976 F.2d 693, 696 (Fed. Cir. 1992)...............................................18

Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994.................................18

N. Am. Processing Co. v. United States, 236 F.3d 695, 698 (Fed. Cir. 2001)..............................7

Nissho Iwai Am. Corp v. United States, 143 F 3d. 1470 (Fed. Cir. 1998). ................................18

*Nissho Iwai Am. Corp*, 143 F 3d. 1473.....................................................................................13

Pima Western, Inc. v. United States, 915 F. Supp. 399, 404-05 (CIT 1996). .............................20

Rockwell Automation, Inc. v. United States, 29 Int'l Trade Rep. (BNA) 1810 (2007)................7

Rollerblade Inc. v. United States, 20 CIT 319 (1996). ...............................................................19

Rubie's Costume Co. v United States, 269 CIT 209 (2002)..........................................................7

Skidmore v. Swift & Co., 323 U.S. 134 (1944)...........................................................................12

Texas Apparel Co v. United States, 12 CIT 1002 (1988).............................................................6

United States v. Mead Corp., 533 U.S. 218, 221..........................................................................16

Universal Elecs. Inc. v. United States, 112 F 3d 488 (Fed. Cir. 1998)........................................6

## Statutes and Rulings

**HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES (2003)**.........................8

HQ 082780 (Dec. 8, 1989) ....................................................................................23

HQ 968400 (Aug. 6, 2007)....................................................................................21

HTSUS 6912.00.39 ..................................................................................................4

HTSUS 6912.00.44 ..................................................................................................4

HTSUS subheading 6912.00.39 ..............................................................................4

HTSUS Subheading 6912.00.39 ..............................................................................4

HTSUS subheading 6912.00.44................................................................................7

Lynteq, Inc. v. United States, 976 F.2d 693, 697 (Fed. Cir. 1992)...................15, 18

Note 6(a) ................................................................................................................12

Note 6(b)................................................................................................................12

NYRL 806035 (Feb. 2, 1995)................................................................................23

NYRL F87579 (June 2, 2000) ...............................................................................23

Ruling Letter D80778 (08/11/1998) ......................................................................17

Ruling Letter H80584 (05/17/2001) ......................................................................12

Sabritas, S.A. de C.V. v. United States, 22 CIT 59, 62 (1998). ...........................13

Sarne Handbags Corp. v. United States, 24 CIT 309, 316 (2000)........................11

*Tariff Classification Study*....................................................................................14

Tariff Classification Study, Schedule 5.................................................................26

Tariff Classification Study, Seventh Supplemental Report (August 14, 1963), Appendix C.,

    "Additional Explanatory Notes and Background Materials". ...........................21

U.S. Note 6(a) ........................................................................................................14

DRAFT FOR DISCUSSION

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    HON. RICHARD K. EATON, JUDGE

_____X

G. G. MARCK AND ASSOCIATES, INC.                :
                                                :
                          PLAINTIFF,            :
                                                :
                                                :   COURT NO. 08-00306
                                                :
                          v.                    :
                                                :
                                                :
THE UNITED STATES,                              :
                                                :
                          DEFENDANT.           :
_____X


**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**


Pursuant to USCIT R. 56, Plaintiff, G. G. Marck & Associates, Inc., [hereinafter "Marck"], by and through its attorney, Edmund Maciorowski, P.C., hereby moves this court for summary judgment. As set forth below, the court should grant summary judgment in favor of the plaintiff because there are no genuine issues to be tried.


## I.    BACKGROUND


As reflected in Section III of Plaintiff's Statement of Material Facts for Which There is no Genuine Issue to be Tried ¶¶ 19 through 109 [hereinafter Plaintiff's Statement] there are 22 mugs and cups involved in the instant circumstances. More specifically, the articles are identifiable by style numbers as 1015, 7168, 286, 39, 3476,

414, 481, 67, 803, 4110, 1209, 1776, 212, 3414, 1376, 1950, 209, 7101, 1276, 81015, 617, and 5176. The common design characteristics shared by each of these articles, both together and as articles within the specified set, are their bright bold colors and compatible rounded rim shapes. These features define the salient characteristics of the Cancun Pattern.

The commercial invoices accompanying the entries the subject of this proceeding accurately describes the subject articles as "stoneware mugs and/or cups." The entries were liquidated as such by customs. Mugs were classified at the time of liquidation under HTSUS 6912.00.44 dutiable at 10% *ad valorem*. Cups were classified at the time of liquidation under HTSUS subheading 6912.00.48 (2006) dutiable at 9.8%. It is the position of Marck that both items are properly classified under HTSUS subheading 6912.00.39 (2006) dutiable at 4.5% for the reason that they are properly described in that subheading as: Other ceramic tableware, other, available in specified sets… in any pattern for which the value of the articles listed in additional note 6(b) of Chapter 69 is over $38.00. The manufacturer of the articles is identified on the commercial invoice accompanying the entries as Huaguang Ceramics Company, Ltd. [hereinafter "Huaguang"] [GUAN, ¶ 8, p. 3] and are imported by plaintiff. [Official Record].

It has been conceded by Customs that the subject articles are "ceramic mugs and cups" [Complaint and Answer ¶¶ 4] [CARTY, p. 2 ¶ 5, pages 3 and 4 and supporting materials] as defined by Additional U.S. Note 1 to Chapter 69 of the HTSUS (2006) for the reason that all of the mugs and cups are:

Shaped articles [Complaint and Answer ¶¶ 5] having glazed bodies [Complaint and Answer ¶¶ 6] of crystalline or substantially crystalline structure [Complaint and Answer ¶¶ 7,8] [CARTY, p. 2 ¶ 5, pages 3 and 4 and supporting materials] the bodies of which are composed essentially of inorganic nonmetallic substances [Complaint and Answer ¶¶ 10, 12] [CARTY, p. 2 ¶ 5, pages 3 and 4 and supporting materials] and are formed and subsequently hardened by such heat treatment [Complaint and Answer ¶¶ 14, 15] [CARTY, p. 2 ¶ 5, pages 3 and 4 and supporting materials] that the bodies, if reheated to pyrometric cone 020 are neither more dense, harder or less porous. [Complaint and Answer ¶¶ 16, 17, 18] [CARTY, p. 2 ¶ 5, pages 3 and 4 and supporting materials] and are not glass. [Complaint and Answer ¶¶ 19] [CARTY, p. 2 ¶ 5, pages 3 and 4 and supporting materials].

It seems equally apparent that customs has conceded that the subject articles are "tableware" as that term is used in the tariff schedule [Complaint and Answer ¶¶ 20, 21] and that the principle use of the article is for serving or storing food or beverages. [Complaint and Answer ¶¶ 22 and 23]. It is submitted, as will be more fully discussed *infra*, that each of these articles include design characteristics that coordinate shapes and colors that are consistent with a pattern of tableware marketed by Marck as the Cancun Dinnerware Line.

## II.    APPLICABLE STATUTORY LANGUAGE

### HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES (2006)

### CHAPTER 69

### CERAMIC PRODUCTS

<u>Additional U.S. Notes</u>

1.  For the purposes of this chapter, a "<u>ceramic article</u>" is a shaped article having a glazed or unglazed body of crystalline or substantially crystalline structure, the body of which is composed essentially of inorganic nonmetallic substances and is formed and subsequently hardened by such heat treatment that the body, if reheated to pyrometric cone 020, would not become more dense, harder, or less porous, but does not include any glass articles.

6.  For the  purposes of headings 6911 and 6912:

(a.)  The term "<u>available in specified sets</u>" embraces plates, cups, saucers and other articles principally used for preparing, serving or storing food or beverages, or food or beverage ingredients, which are sold or offered for sale in the same pattern, but no article is classifiable as being "available in sets" unless it is of a pattern in which at least the articles listed below in (b) of this note are sold or offered for sale.

(b.)  If each of the following articles is sold or offered for sale in the same pattern, the classification hereunder in subheadings,...,6912.00.39, of all articles of such pattern shall be governed by the aggregate value of the following articles in the quantities indicated,..., as determined by the appropriate customs officer under section 402 of the Tariff Act of 1930, as amended, whether or not such articles are imported in the same shipment:

> 12 plates of the size nearest to 26.7 cm in maximum dimension, sold or offered for sale,
> 12 plates of the size nearest to 15.3 cm in maximum dimension, sold or offered for sale,

12 tea cups and their saucers, sold or offered for sale,
12 soups of the size nearest to 17.8 cm in maximum dimension, sold or offered for sale,
12 fruits of the size nearest to 12.7 cm in maximum dimension, sold or offered for sale,
1 platter or chop dish of the size nearest to 38.1 cm in maximum dimension, sold or offered for sale,
1 open vegetable dish or bowl of the size nearest to 25.4 cm in maximum dimension, sold or offered for sale,
1 sugar of largest capacity, sold or offered for sale,
1 creamer of largest capacity, sold or offered for sale.

\*          \*          \*

| **HEADING/ SUBHEADING** | **ARTICLE DESCRIPTION** | **RATES OF DUTY** |
| --- | --- | --- |
| 6912.0 | Ceramic tableware, kitchenware, other household articles and toilet articles, other than of porcelain or china: | |
| | Tableware and kitchenware: | |
| | \*          \*          \* | |
| | Other: | |
| | \*          \*          \* | |
| | Other: | |
| | Available in specified sets | |
| | \*          \*          \* | |

| HEADING/<br>SUBHEADING | ARTICLE DESCRIPTION | RATES<br>OF DUTY |
|---|---|---|
| 6912.00.39 | In any pattern for which the aggregate value of the articles listed in additional U.S. note 6(b) of this chapter is over $38…………….…4.5% | |
| | *      *      * | |
| | Other: | |
| | *      *      * | |
| 6912.00.44 | Mugs and other steins………………………….10% | |
| | *      *      * | |
| 6912.00.48 | Other……………………….………………………9.8% | |

## III.   STANDARD OF REVIEW

It is submitted that the subject case may be properly disposed by Motion for Summary Judgment. Under USCIT Rule 56, summary judgment is appropriate where there is no genuine issue as to any material fact. It is the function of the court to determine whether there are any factual disputes that are material to the resolution of the action. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986); *Texas Apparel Co v. United States,* 12 CIT 1002, 1004, 698 F. Supp. 932, 934 (1988) *aff'd* 883 F. 2d 66, 7 Fed. Cir (T) 128 (1989), cert. denied, 493 U.S. 1024 (1990) When the only issue is the

scope of the HTSUS provisions with respect to a particular product, such scope may be

determined as a matter of law. More specifically:

> It is axiomatic that the government's classification decision is presumed to
> be correct 28 U.S.C.S. 2639 (a)(1) (1998 Supp. V). It is equally axiomatic
> that where there are no material facts in dispute, the presumption of
> correctness does not apply since it carries no force as to the questions of
> law before the court. *Universal Elecs. Inc. v United States*, 112 F. 3rd 488,
> 492 (Fed Cir. 1997) *Rubie's Costume Co., v United States*, 269 CIT 209,
> 196 F. Supp. 2d 1320 (2002)

For a classification issue, "summary judgment is appropriate when there is no genuine

dispute as to the underlying factual issue of exactly what the merchandise is." *Bausch &*

*Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (citations omitted).

"Under such circumstances, all that remains is the interpretation of the relevant tariff

provisions, which is a question of law." *Rockwell Automation, Inc. v. United States*, 29

Int'l Trade Rep. (BNA) 1810 (2007) (*citing Boen Hardwood Flooring, Inc. v. United*

*States*, 357 F.3d 1262, 1264 (Fed. Cir. 2004)).


## IV. THE SUBJECT ARTICLES ARE WITHIN
## THE SCOPE OF THE TARIFF TERM
## "AVAILABLE IN SPECIFIED SETS."

The General Rules of Interpretation "of the HTSUS and the Additional United

States Rules of Interpretation govern the proper classification of merchandise entering the

United States." *N. Am. Processing Co. v. United States*, 236 F.3d 695, 698 (Fed. Cir.

2001) (*citing Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999)).

According to GRI 1, primary consideration in determining whether merchandise should

be classified in a heading should be given to the language of the heading and to any relevant chapter or section notes. Gen. R. Interp. 1, HTSUS.

The defendant acknowledges that classification of the subject articles is within the scope of Heading 6912 which provides for "Ceramic tableware . . . Tableware and kitchenware . . ." [Defendant's Response to Plaintiff's First Interrogatories and Requests for Production of Documents Directed to the United States, ¶4]. Plaintiff contends that classification is appropriate under Subheading 6912.00.39, which provides, in relevant part, for "Ceramic tableware . . . Tableware and kitchenware . . . Other . . . Other . . . Available in specified sets . . ."

## A. Specified Sets

Note 6(a) states a "specified set" must consist of a certain number of pieces in the same pattern, as delineated in U.S. Note 6(b). The Marck dinnerware "pattern" here involved satisfies the number and piece requirements of U.S. Note 6(b) as follows:

- "Cancun Cobalt 10 1/4" Plate" (CA-16-CB) is a ceramic dinnerware plate of the size nearest to 26.7 cm in maximum dimension. [MILLER, ¶ 5].

- "Cancun Cobalt 6 5/8" Plate" (CA-6-CB) is a ceramic dinnerware plate of the size nearest to 15.3 cm in maximum dimension. [MILLER, ¶ 6].

- "Cancun Cobalt 7 oz. Tall Cup" (CA-1-CB) is a ceramic dinnerware tea cup, and accompanies "Cancun Cobalt 6" Saucer" (CA-2-CB) which is ceramic dinnerware saucer. [MILLER, ¶¶ 7 & 8].

- "Cancun Cobalt 7" Bowl" (CA-44-CB) is a ceramic dinnerware soup of the size nearest to 17.8 cm in maximum dimension. [MILLER, ¶ 9].

- "Cancun Cobalt 4 oz. Bowl, 4 3/4" Fruit" (CA-11-CB) is a ceramic dinnerware fruit of the size nearest to 12.7 cm in maximum dimension. [MILLER, ¶ 10].

- "Cancun Cobalt 12 1/2 Platter" (CAN-14-CB) is a ceramic dinnerware platter of the size nearest to 38.1 cm in maximum dimension. [MILLER, ¶ 11].

- "Cancun Cobalt 10" Bowl" (CA-45-CB) is a ceramic dinnerware open vegetable of the size nearest to 25.4 cm in maximum dimension. [MILLER, ¶ 12].

- "Cancun Cobalt Sugar Bowl w/lid" (CA-61-CB) is a sugar of largest capacity. [MILLER, ¶ 13].

- "Cancun Cobalt 14 oz. Creamer (CA-60-CB) is a creamer of largest capacity. [MILLER, ¶ 14].

U.S. Note 6(a) provides that, in addition to the pieces specifically mentioned above, a specified set embraces any "other articles principally used for preparing, serving, or storing food or beverages . . ." Defendant acknowledges that the subject articles are tableware for serving or storing food and beverages and that this use exceeds all other uses [Complaint and Answer, ¶¶ 20-23].[1] It seems readily apparent therefore, that the precise parameters of note 6(b) are readily met, thereby leading to the inescapable conclusion that the above referenced articles constitute the relevant specified set.

## B. "Available" in Specified Sets.

HTSUS 6912.00.39 further requires that the subject articles be *available*. U.S. Note 6(a)

---

[1] Additionally, "mug" is defined by Webster's dictionary as "a drinking cup, usually cylindrical in shape, having a handle, and often of a heavy substance, as earthenware." Accordingly, there can be no dispute the principal use of a mug is serving beverages.

defines this term as "sold or offered for sale." "To determine the common meaning of a tariff term, the Court may utilize standard dictionaries and scientific authorities, as well as its own understanding of the term." *Sabritas, S.A. de C.V. v. United States*, 22 CIT 59, 62 (1998) The phrase "sold or offered for sale" requires further definition. "The Court derives the common meaning [of phrases] by determining the meaning of each of its constituent words." *Sarne Handbags Corp. v. United States*, 24 CIT 309, 316 (2000). WEBSTER'S ENCYCLOPEDIC DICTIONARY OF THE ENGLISH LANGUAGE (1989) (hereinafter "Webster's Dictionary"), defines "offer" as:

> 11. to present for sale: *He offered the painting to me at a reduced price.* 12. to tender or bid as a price: *to offer ten dollars for a radio.* . . . 21. a proposal or bid to give or pay something as the price of something else; bid; *an offer of $30,000 for a house.* 22. the condition of being offered: an offer for sale. 23. something offered.

The practice in the Chinese ceramic industry is to provide catalogs as an invitation to conduct business and as a general reference to the manufacturer's design and production capabilities. Due to vast product offerings, it is impractical to publish, ship, and distribute a catalog containing each product offered for sale, and so is not customary in the industry. This limited purpose is confirmed by reference to the introduction in Huaguang's catalog, which states the complete product offering constitutes more than 600 styles and 108 color glazes. Accordingly, the catalog, on its face admits that it only presents a truncated version of the entire product offering.

Customs previously issued rulings letters comport with this commercial reality by only requiring claims for classification under HTSUS Subheading 6912.00.39 be supported by manufacturer affidavits attesting to item availability and value. Ruling letters, while not determinative, are authoritative insofar as they are persuasive. In determining the deference owed to ruling letters issued by customs, the Supreme Court stated "a tariff classification has no claim to judicial deference under *Chevron,* there being no indication that Congress intended such a ruling to carry the force of law, but we hold that under *Skidmore* v. *Swift & Co.,* 323 U.S. 134 (1944), the ruling is eligible to claim respect according to its persuasiveness." *United States v. Mead Corp.*, 533 U.S. 218, 221.

In Ruling Letter H80584 dated 05/17/2001, [Exhibit 4] a distributor sought to import a 20 piece ceramic dinnerware set under HTSUS Subheading 6912.00.39. Customs iterated its view that the conditions set forth in U.S. note 6(b) are met upon the submissions of "an affidavit from the seller enumerating the specific items available in the pattern and the value of these items." Similarly, in Ruling Letter D80779 dated 08/11/1998 [Exhibit 5]. Classification was sought under HTSUS Subheading 6912.00.39 for certain "charger plates". Customs reaffirmed its view that to verify the requirements of U.S. Note 6(b), requested "a manufacturer's affidavit listing all of the items in the 77 piece set including their sizes and values that are in the same pattern as the subject merchandise" be submitted.

It is submitted that the affidavits of both Raymond Guan *inter alia,* ¶ 24, p. 8 and Christopher Miller *inter alia,* ¶ 37, p. 19 unequivocally establish that the specified set described *supra* at pages 2-6, was, *not only* offered for sale by Huaguang at all times relevant to the instant action, but was actually sold to others including Marck. Moreover, both affidavits affirm that the "Cancun" dinnerware line identifies the relevant pattern for the specified set.

### C.   The Cancun Pattern Includes Both the Specified Set and the Subject Mugs and Cups

#### a.   The Tariff Classification Study provides insight into the meaning of the term "pattern".

Note 6(b) to Chapter 69 requires that the pieces included in the specified set, be in the same "pattern." In determining the meaning of a tariff term it is axiomatic that:

> "The definition and scope of terms in a provision of the HTSUS is to be determined by the wording of the statute and any relative section or chapter note [citations omitted]. The language of the statute is determinative unless legislative intent is clearly in contrast. [citations omitted] However, if a tariff term is not clearly defined by the HTSUS, and if legislative history is not determinative of its meaning its correct meaning is resolved by ascertaining its common and commercial meaning. [citations omitted]. *Sabritas, S.A. de C.V. v. United States* 22 CIT 59, 62 (1998).

Illustrative of the application of this doctrine is the court's analysis in *Nissho Iwai Am. Corp v. United States,* 143 F 3d. 1470 (Fed. Cir. 1998). In this case the proper classification of the merchandise pivoted on the definition of the tariff term "foxing-like

band". The Federal Circuit determined that when ascertaining the meaning of a tariff

term, congressional intent must be gleaned from the statutory language itself and, when

ambiguous, the legislative history. Accordingly, the court relied on the *Tariff*

*Classification Study* in its analysis to determine the meaning of the disputed terms, stating

in relevant part:

> The TCS, which was produced contemporaneously with
> the introduction of the term in question into the TSUS, is
> indicative of legislative intent. *See Lonza, Inc. v. United*
> *States*, 46 F. 3d 1098, 117 (Fed. Cir. 1995) (looking to the
> TCS to interpret a term used in the TSUS and carried over
> into the HTSUS). *Id* at p. 1473.

The court went on to determine that certain features of the shoe in question were within

the definition of "foxing-like band" based on the definitions supplied by TCS. *Id.* at

1473-5.[2]

    In the instant circumstance, it is noteworthy that the tariff term "pattern" has long

been a part of the classification scheme for ceramic dinnerware. It is readily apparent

from careful inspection of the statutory language from the tariff schedules that there was

no change in the operative language delineating the scope of the term "pattern" for tariff

---

[2] See also *Libbey Glass v. United States*, 921 F. 2d 1263 (Fed. Cir. 1990) (the Tariff Classification Study is "part of the legislative history of the TSUS"); *Arthur Humphreys v. United States*, 973 F. 2d 1554 (Fed. Cir. 1992); *Rollerblade Inc. v. United States*, 20 CIT 319 (1996) (the TCS is the "prime source of legislative intent"); *EM Indus v. United States*, 22 CIT 156 (1998) (interpretations under the HTS may be aided by an explanatory note in the TCS). *Commercial AWM Cookware, v. United States*, 20 CIT 1007 n.6 (1996) (the import specialist consults TCS to determine classification, *quoting Sturm, Customs Law & Admin* (§ 7.2 at 31 96 ); *Genesco v. United States*, 24 CIT 339, 480 (2000) (legislative history must be referenced when there is no common meaning, common understanding, statutory definition, or industry practice).

purpose in the transition from the TSUS to the HTSUS. The Tariff Classification Study

provides:

> Headnote 2(a) of subpart C to Part 2 Schedule 5 of to TSUS
> Provided in relevant part: "For the purposes of this subpart,
> the term "*available in specified sets*" (items 533.23, 533.25,
> 533.27, 533.63, 533.65, 533.67, and 533.69) embraces
> plates, cups, saucers, and other articles chiefly used for
> preparing, serving, or storing food or beverages, or food or
> beverage ingredients, which are sold or offered for sale in
> the same pattern,…" Tariff Classification Study, schedule
> 5, United State Tariff Commission, (1960) at p. 65.

That the headnote remained basically unchanged during the transition from the TSUS to

the harmonized system is confirmed by reference to the same headnote language in

headnote 2(a), subpart C of Schedule 5 of the TSUS (1987) [Exhibit 6].

It seems readily apparent, therefore that because the Tariff language has not

changed from the TSUS to the HTSUS neither has the meaning of the term changed. We

submit that the term tariff term "pattern" has a long history of uniform application.

Customs recently reached the same conclusion in an analogical context:

> Where the text of tariff provision has undergone only minor
> changes from the TSUS to the HTSUS, the high values of
> uniformity and predictability - not to mention the merits of
> honoring Congress' decision to retain prior policy - counsel
> courts to credit prior decisions interpreting the TSUS
> provision (See, e.g., *Pima Western, Inc. v. United States*,
> 915 F. Supp. 399, 404-05 (Ct. Int'l Trade 1996) . . . *As
> there has been no major changes to the tariff provisions for
> "articles available in specified sets" from the TSUS to the
> HTSUS and no dissimilar interpretation is required by the
> text of the HTSUS, there is no clear evidence that would*

> *require a different interpretation than that given under the
> TSUS.* (Emphasis added). HQ 968400 dated Aug. 6, 2007.

In view of these precepts it seems evident the definition of the term pattern provided in a later volume of the TCS must control the instant circumstance. There it is said,

> "The phrase "in the same pattern" in the headnotes to this
> subpart refers to articles in coordinated shapes, colors, or
> decorations, including plain white articles, designed to be
> used together as sets. *Tariff Classification Study*, Seventh
> Supplemental Report Appendix C., "Additional
> Explanatory Notes and Background Materials" dated
> August 14, 1963, at page 100. [Exhibit 6].

On the basis of the foregoing we regard it as abundantly apparent that the requirement

that specified sets be "in the same pattern" is interpreted broadly.

### b. The Common Meaning of the Tariff Term "Pattern" is consistent with the views of the Tariff Classification Study outlined above.

To determine common meaning of a tariff term, the Court may utilize standard

dictionaries and scientific authorities, as well as its own understanding of the term."

*Lynteq, Inc. v. United States*, 976 F. 2d 693, 697 (Fed. Cir. 1992). The definition of the

term "pattern" above cited in the Tariff Classification Study comports well with the

meaning ascribed to the tariff term by relevant lexicographic authorities that confirm that

any particular pattern need only be "harmonious" in color and design. Webster's

Encyclopedic Unabridged Dictionary (1989) defines "pattern" as:

> pattern.   n.  1. a decorative design as for China, wallpaper,
> textile fabrics, etc. 2.  decoration or ornament having such a
> design... 4. a distinctive style, model, or form... 5. a
> combination of qualities, ...etc., forming a consistent or
> characteristic arrangement.

Similarly, The Oxford Dictionary and Thesaurus American Edition, Oxford University Press 1996 defines the terms as follows:

> pattern.  n.  1. a repeated decorative design on wallpaper, cloth, a carpet, etc…
>
> \*               \*               \*
>
> n.  1.  figure, motif, design, devise, decoration, ornament.

This view is further confirmed by reference to authoritative publications concerning ceramics.

> The character of a form largely determines the type of decoration that would be most effective. A set of dinnerware, for example, does not need a strong motif, since it will be covered by food most of the time. Many potters avoid making "sets," because they fear the boredom of doing the same design over and over again. *But a set need not have an identical pattern on each piece, as long as the colors and designs are generally harmonious.* A POTTER'S HANDBOOK: CERAMICS (Fourth Edition: 1978): (Emphasis added). *Id. Decoration and Design*, at page 153.

### c.   Experts agree that the bold bright colors and rounded rim shapes define the Cancun Pattern

Dr. John Conrad a retired professor of ceramics at Mesa College whose resume is attached to his affidavit over a distinguished career exceeding 40 years has authored numerous articles and books regarding the design of ceramics and has, himself, engaged in extensive research involving color and design. As referenced in ¶ D, p. 5 of his

Affidavit he has had an opportunity to inspect, not only the subject articles piece by piece, but also the sample identified herein as the "specified set". He had no difficulty whatsoever in concluding that each of the subject articles, and all of them, incorporated design characteristics, including bright bold colors and round rim shapes that were sufficient to conclude they were in the Cancun pattern.

Similarly, Curtis E. Fahnert, a professional ceramics designer (retired) spent his working life designing ceramic tableware for *inter alia* Homer Laughlin China Co., Canonbury Pottery and Royal China Co. Mr. Fahnert likewise had an opportunity to inspect representative sample of the mugs and cups here involved as well as a representative sample of the specified set. Independently of the opinion formulated by Dr. Conrad, Mr. Fahnert otherwise concurs in those findings stating succinctly:

> "it is my professional opinion that when color coordinated the mugs and cups clearly have the same design characteristics including bright bold colors and a round rim shape consistent with and in the same "pattern" as the "Cancun" dinnerware line as that term is used in the tariff schedule." [FAHNERT ¶ E., p. 5]

It is equally noteworthy that the experts relied on the definition of a pattern identified *infra* in The Tariff Classification Study Seventh Supplemental Report as the basis for their opinions. [FAHNERT ¶ C., p. 4] [CONRAD ¶ C., p. 5]. While considerations, such as tastes, lifestyle, and the prevailing cultural milieu must constitute part of what it means for colors to be "coordinating" or "harmonious," color theories provides guidance for understanding this artform. "Analogous colors" are considered harmonious, and it has been posited that they are "any colors lying next to each other on the color wheel,"

and, further that "[a]nalogous colors are inherently harmonious because they reflect light waves that are similar." COLOR: A COURSE IN MASTERING THE ART OF MIXING COLORS (TARCHER-PENGUIN: 2004) at 23. However, limiting "coordinating colors" to analogous colors would be improper, because the subjective factors involved do not lend themselves to an inflexible rule. This is further confirmed because:

> Nearly every writer on color proposes one theory or another on how to achieve harmonious color. Some recommend analogous color schemes, some suggest complementary colors, other triadic schemes (three hues equidistant on the color wheel . . .), or tetradic schemes (hues at four points on the wheel. . .), and still others recommend all the above. *Id.* at 85.

The glossary of this resource defines "color harmony" as "[t]he pleasing result of balanced color relationships." *Id.* at 193. The nature of determining what colors are harmonious is further confirmed by "COLOR HARMONY: A GUIDE TO CREATIVE COLOR COMBINATIONS," which states that "[i]n color as well as music, harmony means an aesthetic arrangement of parts to form a pleasing whole . . ." *Id.* at 6. We submit therefore that, it is readily apparent that aesthetically pleasing combinations of two or more colors is possible with the Cancun set, and is a means by which the set is advertised at retail. This view is readily confirmed by each of the Experts here proffered.

Secondly, by the subject articles are in shapes harmonious with the shapes of the Cancun pattern. The Cancun set is available in "rolled edge" and "narrow rim" pieces. The characteristics of the rolled edge pieces are a broad rim approximately 1" wide that transforms the flat surface into a concave surface. These pieces feature a semicircular lip

that circumscribes the entire exterior of the item. This broad rim frames and presents the food to the diner and prevents it from spilling. These pieces differ slightly from the narrow rim pieces, which are identical but for the characteristic thin rim, approximately 1/4" inch wide, that results in a greater usable surface area on the plates and a more minimalistic appearance.

## V. THE SPECIFIED SETS ARE WITHIN THE SCOPE OF THE TARIFF TERM "HAVING AN AGGREGATE VALUE OVER $38.00."

Finally, classification under HTSUS Subheading 6912.00.39 requires that the aggregate value of the specified set be over $38.00. Marck submits that the articles imported were part of specified sets which were both offered for sale and actually sold by the manufacturer Huaguang during the calendar year 2006 as reflected in the Guan Affidavit ¶ 24, p. 8 and the Miller Affidavit ¶ 37, p. 19. Defendant to date has offered nothing in the way of evidence to refute this reality. The availability of the specified set articles from the manufacturers for the transactions involved before the court is established by the declarations provided and included herein. Accordingly, the total F.O.B. price of the 77 articles that included in any specified set will always exceed $38.00 USF based on comparable sales of same or substantially the same articles manufactured by Huaguang. [GUAN, ¶ 24] [MILLER, ¶ 37]

# VI.    CONCLUSION

Upon close inspection of the Cancun set, one can recognize that there are three defining elements to the pattern. First, there is a characteristic smooth semicircular lip that circumscribes the entire exterior of each individual piece. Second, the inner rim of the plates, platters, and saucers of the pattern have smooth undefined edges, as opposed to sharp distinct edges; everything is, in effect, "smoothed over," as a highly polished stone. Finally, individual pieces in the set share common profiles.

These common characteristics are shared with the subject articles. The ceramic mugs incorporate traditional of profile types.  Present throughout the Cancun set, the lip of each subject article is smooth and semicircular and, each subject article has undefined and smooth contours. Any combination of these distinctive characteristics incorporated into the subject articles determines they are in the same pattern as the Cancun set. Accordingly, purchasers may choose one mug over another to draw focus to primarily used pieces or pieces that need complementing (e.g., a purchaser who wants to complement the pasta bowl (CA-120), which has an ogee profile, might prefer a mug whose bottom has an ogee profile, such as the Titan mug, item number 7101).

The subject articles are in the same pattern, and accordingly are classifiable accordingly to give effect to the statutory definition of the tariff terms at issue. The legislative intent supports this treatment, and an indepth review of the legislative history confirms the purpose behind the instant statute was to ensure classification of all items in

the same pattern at a single rate of duty.[3] It seems equally apparent that the views expressed in the Tariff Classification Study comports well with the common meaning of the term "pattern", and further, the Cancun dinnerware pattern including all of its elements are embraced by the scope of the tariff term..

It is the plaintiff's contention that the foregoing establishes that any remaining issues before the court are purely questions of law and, as such, are appropriate for disposition by summary judgment. Based on the evidence presented, it is beyond honest dispute that the subject articles were available in the same or substantially the same of articles of patterns in specified sets with a value exceeding $38.00. Accordingly, plaintiff respectfully moves this court for entry of summary judgment in its favor, and requests that the subject entries be reliquidated and, together with all allowable interest in accord with law, that appropriate refunds issue.

Respectfully submitted,

/S/

Edmund Maciorowski
**EDMUND MACIOROWSKI, P.C.**
101 West Long Lake Road
Bloomfield Hills, MI 48304
(248) 646-6771

**ATTORNEY FOR PLAINTIFF**
Marck & Associates, Inc.
300 Phillips Avenue
Toledo, OH 43612

---

[3] In the *Tariff Classification Study*, Schedule 5, "Public notice of hearing on schedule 5, issued July 15, 1958" at page 221, Assistant General Counsel Russel N. Shewmaker engaged in an exchange about the relevant statute language and confirmed that the goal of U.S. Note 6 was that items of a single pattern be classified "in a single provision at the same rate of duty." *Id.* (See also *Id.* at 384).

## CERTIFICATION OF SERVICE BY MAIL

Wisenna Magiera certifies that she is an Administrative Assistant with offices located at EDMUND MACIOROWSKI, P.C., 101 West Long Lake Road, Bloomfield Hills, MI 48304, and that on May 16, 2013, she served the attached papers upon:

Attorney in Charge
International Trade Field Office
Commercial Litigation Branch
Department of Justice, Civil Div.
26 Federal Plaza
New York, New York 10278

**Attn:** Jason Kenner, Esq.

the attorney(s) for the Defendant(s) herein, by depositing a true copy thereof in an United States mail receptacle, properly enclosed, postage prepaid, and addressed to said attorney(s) as indicated above.

/s/
_____
Wisenna Magiera

**APPENDIX 1 TO PLAINTIFF'S BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

## Affidavit of Dr. William M. Carty

### Filed Manually

### By Certified Mail

**APPENDIX 2 TO PLAINTIFF'S BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

# Affidavit of Curtis Fahnert

## Filed Manually

## By Certified Mail

**APPENDIX 3 TO PLAINTIFF'S BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

# Affidavit of Dr. John Conrad

**Filed Manually**

**By Certified Mail**

**APPENDIX 4 TO PLAINTIFF'S BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

## Affidavit of Raymond Guan

## Filed Manually

## By Certified Mail

**APPENDIX 5 TO PLAINTIFF'S BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

## Affidavit of Christopher Miller

### Filed Manually

### By Certified Mail

ORIGINAL

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HONORABLE RICHARD K. EATON, JUDGE

---

MARCK AND ASSOCIATES, INC.,                    :

               Plaintiff,          :

             v.                      :          Court No. 08-00306

UNITED STATES,                                 :

             Defendant.              :

---

## DEFENDANT'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS

Pursuant to the provisions of Rules 26 and 36 of the Rules of the United States Court of International Trade (CIT), defendant the United States hereby supplements its responses to plaintiff's first request for admissions.

2. Admits.

3. Defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny.  Additional U.S. Note 1 to Chapter 69 defines ceramics as having a "body of crystalline **or** substantially crystalline structure..." As such, mugs may fit within Additional U.S. Note 1 to Chapter 69 in two instances, *i.e.* if it has a crystalline structure or if it has a substantially crystalline structure.  Plaintiff alleges both in its complaint.  Complaint at 7 and 8.  Defendant requested the factual underpinning for these allegations; however, we were provided no evidence of whether the body of the mugs were crystalline or substantially crystalline.  As such we are unable to admit or deny this request.  We admit; however, that the mugs fit within the language of Additional US Note 1 to Chapter 69.

4. Defendant has made a reasonable inquiry but the information known or readily obtainable



**EXHIBIT 1**

is insufficient to enable the defendant to admit or deny.  Additional U.S. Note 1 to Chapter 69 defines ceramics as having a "body of crystalline **or** substantially crystalline structure..." As such, mugs may fit within Additional U.S. Note 1 to Chapter 69 in two instances, *i.e.* if it has a crystalline structure or if it has a substantially crystalline structure.  Plaintiff alleges both in its complaint.  Complaint at 7 and 8.  Defendant requested the factual underpinning for these allegations; however, we were provided no evidence of whether the body of the mugs were crystalline or substantially crystalline.  As such we are unable to admit or deny this request.  We admit; however, that the mugs fit within the language of Additional US Note 1 to Chapter 69.

7.  Admits, however, denies any inference that the mugs were "sold or offered for sale" within the meaning of the tariff provisions at issue.

8.  Defendant supplements our response to add, denies that Series 209 is solely referred to as the "Savannah Endeavor Mug."  Avers that in Marck's product catalog "Ceramic Your Complete Source," (Exhibit four to plaintiff's response to our First set of Interrogatories and Requests for Production), Series 209 is titled "Sante Fe Endeavor."

9.  Admits.

11. Admits that Exhibit 1 appended to plaintiff's Request for Admissions is genuine print-out from the current International Tableware website.  Without knowing for which purposes plaintiff seeks to introduce the document, we cannot admit or deny the documents admissibility.

12.-21.Admits that the items in these requests are listed in Exhibit 1, attached to plaintiff's Request for Admissions, as being "Cancun" trademarked items all in cobalt blue. Denies the remainder as there is no Cancun pattern as it is plaintiff's position that the Cancun pattern is limitless, driven by the consumer, and can include such items as camouflage mugs,

marbleized mugs and speckled mugs.  Miller Dep at 41.  See also Supplemental Response at 8, 10

indicating plaintiff's description of the Cancun pattern includes all colors and mugs at issue.

22.  Admits that Item CA-16-CB 10 1/4 inch plate is the plate nearest in size to 26.7 cm in

maximum dimension depicted in the Cancun trademarked section of the exchanged ITI catalog.

23.  Admits that the CA-6-CB 6/58 plate is the plate nearest in size to 15.3 cm depicted in the

Cancun trademarked section of the exchanged ITI catalog.

25. · Admits that the CA-44-CB 7 inch bowl is the bowl nearest in size to 17.8 cm shown in

the Cancun trademarked section of the exchanged ITI catalog.

26.  Admits that the CA-11-CB 4 3/4 inch fruit bowl is the bowl nearest in size to 12.7 cm

shown in the Cancun trademarked section of the exchanged ITI catalog.

27.  Deny, as a platter of 13 1/4 inches is equivalent to 33.7 cm or 4.4 cm away from 38.1.  In

the Cancun trademark section of ITI's catalog, however, it appears that a platter of 15.5 inches is

available.  15.5 inches is equivalent to 39.4 cm, or within 1.3 cm of 38.1 cm.

28.  Admits that the CA-45-CB 10 inch bowl is the bowl nearest in size to 25.4 cm depicted in

the Cancun trademarked section of the exchanged ITI catalog.

29.  Admits that the item CA-61-CB sugar bowl is the largest capacity sugar shown in the

Cancun trademarked section of the exchanged ITI catalog because it is the only sugar shown in

the Cancun trademarked section of the ITI catalog.

30.  Admits that the item CA-60-CB creamer is the creamer of largest capacity shown in the

Cancun trademarked section of the exchanged ITI catalog because it is the only creamer shown in

the Cancun trademarked section of the ITI catalog.

33. Denies.  During discovery we requested information on the end users of the mugs in question.

In response plaintiff stated that it did not possess that information.  Further, since our responses,

Mr. Miller testified that a majority of the mugs plaintiff sells are sold to retailers who decorate

the mugs for resale.  Finally, in its Responses to our Third set of Interrogatories and Requests for

Production (Third Response) plaintiff reiterated that a majority of the mugs are sold to decorators

who decorate the mugs for resale.  See Third Responses at 10.  We note that sublimation is often

a part of decorating a mug.

34. Denies.  During discovery Mr. Miller testified that a majority of the mugs plaintiff sells

are sold to retailers who decorate the mugs for resale.  Mark Dep at 28.  Further, plaintiff

reiterated that a majority of the mugs are decorated before resale.  Specifically plaintiff stated

"...the sale of the mugs and cups at issue are made primarily to decorators, the first purchaser in

the distribution chain.  The decorators then place images, logos and licensed designs onto the

mugs and cups they purchase from Marck."  See Third Responses 10.

47. Admits that the items in these requests are listed in Exhibit 1, attached to plaintiff's

Request for Admissions, as being "Cancun" trademarked items.  Denies the remainder as there is

no Cancun pattern as it is plaintiff's position that the Cancun pattern is limitless, driven by the

consumer, and can include such items as camouflage mugs, marbleized mugs and speckled mugs.

Miller at 41.  See also Plaintiff's Supplemental Response to our First interrogatories and Requests

for Production at 8,10, 11 indicating plaintiff believes all colors and mugs at issue are part of a

"Cancun pattern".

48. Admits that the items in these requests are listed in Exhibit 1, attached to plaintiff's

Request for Admissions, as being "Cancun" trademarked items.  Denies the remainder as there is

no Cancun pattern as it is plaintiff's position that the Cancun pattern is limitless, driven by the

consumer, and can include such items as camouflage mugs, marbleized mugs and speckled mugs.

Miller Dep at 41, plaintiff's Supplemental Response to our First interrogatories and Requests for Production at 8, 10, 11. Thus, further deny the listed items are part of a specified set.

Respectfully submitted,

STUART DELERY
Acting Assistant Attorney General

BARBARA S. WILLIAMS
Attorney in Charge
International Trade Field Office

JASON M. KENNER
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, New York 10278
Attorneys for Defendant
Tel. No. 212-264-9230 or 9236

Dated: July 9, 2012

I, Jason M. Kenner, the undersigned agent for the United States, having prepared the foregoing responses, do hereby declare upon information and belief, under the penalties of perjury, that the responses are true and correct.

## CERTIFICATE OF SERVICE BY MAIL

JASON M. KENNER certifies that I am a trial attorney in the office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, with offices located at 26 Federal Plaza, New York, NY 10278, and that on July 9, 2012, on behalf of the United States, defendant herein, I caused the annexed supplemental responses to be served upon:

> Edmund Maciorowski, Esq.
> 101 West Long Lake Road
> Bloomfield Hills, MI 48304

the attorney(s) for the plaintiff(s) herein, by the deposit of a copy thereof in a United States mail receptacle, properly enclosed in a securely closed envelope, duly franked or postage prepaid, addressed to said attorney(s) as above indicated.

JASON M. KENNER

Sally Wyborski

**From:** Edmund Maciorowski
**Sent:** Wednesday, July 18, 2012 11:20 AM
**To:** Kenner, Jason (CIV)
**Subject:** RE: MAR-501: Outstanding Discovery; Marck and Assc. v United States

Jason:

Ok. good. I appreciate your for clarifying that.

For the record we were not seeking the reopening of discovery just a thirty day extension of the current scheduling order dates.

Regards,


Edmund Maciorowski
**EDMUND MACIOROWSKI, P.C.**
101 West Long Lake Road
Bloomfield Hills, MI 48304
Tel. (248) 646-6771  Ext. 101  Fax (248) 646-6928


This message and/or any attachments may contain confidential and/or legally privileged information and is intended for use only by the intended addressee. If you are not the intended addressee, you are not authorized to disclose, reproduce, or distribute the contents of this message or take action based on information contained herein. If this e-mal is received in error, please notify the sender immediately and delete any remnants of this message from your system.

**From:** Kenner, Jason (CIV) [mailto:Jason.Kenner@usdoj.gov]
**Sent:** Wednesday, July 18, 2012 11:10 AM
**To:** Edmund Maciorowski
**Subject:** Re: MAR-501: Outstanding Discovery; Marck and Assc. v United States

Ed,

We are not contesting that the articles fit within the language of crystalline. The cost and delay of a new expert report is unnecessary. As such I cannot consent to reopening discovery.

Best,

Jason


**From:** Edmund Maciorowski [mailto:emaciorowski@emcustoms.com]
**Sent:** Wednesday, July 18, 2012 10:22 AM
**To:** Kenner, Jason (CIV)
**Cc:** Miller, Justin R. (CIV)
**Subject:** RE: MAR-501: Outstanding Discovery; Marck and Assc. v United States

Thank you Jason:

I did receive your supplemental response in the interim. All the more reason to extend for an additional thirty days. I will need to hire a testing service to confirm the crystalline nature of the articles and to provide you with a copy of the report. There will be other questions too I am sure. This should bring these matters to a conclusion as far as exchanges of discovery are concerned. Your continuing consideration is appreciated.



**EXHIBIT 2**

7-18-2012

ORIGINAL

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HONORABLE RICHARD K. EATON, JUDGE

MARCK AND ASSOCIATES, INC.,                    :

                     Plaintiff,          :

                v.                              :          Court No. 08-00306

UNITED STATES,                                      :

               Defendant.          :

## DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS

Pursuant to the provisions of Rules 26 and 36 of the Rules of the United States Court of

International Trade (CIT), defendant the United States responds to plaintiff's requests for

admission dated May 25, 20011 (Request for Admissions):

### RESPONSES

1.  Admits.

2.  The defendant observes that discovery is not yet complete. The defendant has made
a reasonable inquiry but the information known or readily obtainable is insufficient to enable the
defendant to admit or deny. Given that discovery is not complete, the defendant reserves its right
to supplement this response if appropriate.

3.  The defendant observes that discovery is not yet complete. The defendant has made
a reasonable inquiry but the information known or readily obtainable is insufficient to enable the
defendant to admit or deny. Given that discovery is not complete, the defendant reserves its right
to supplement this response if appropriate.

4.  The Defendant observes that discovery is not yet complete. The defendant has made



**EXHIBIT 3**

a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate.

5. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate. In addition, we respond, admits that the commercial invoices, covering the sale of the subject merchandise to plaintiff, set forth the name Shandong Zibo Niceton-Marck Huaguang Ceramics, Ltd. (Shandog Zibo) at the bottom of each invoice. Avers that the top of the same invoice lists Niceton International Limited (Hong Kong). Denies for lack of information sufficient to admit or deny whether Shandong Zibo is the manufacturer of each mug and cup at issue as Shandong Zibo is not otherwise listed as the manufacturer of the mugs and cups. Further, avers that in previous actions plaintiff has stated that certain mugs and cups were manufactured by either Shandong Linyi or Huaguang Ceramics Company Ltd. The defendant has not been provided any information on the relationship, if any, between Shandong Linyi or Huaguang Ceramics Company Ltd. and "Shandong Zibo Niceton-Marck Huaguang Ceramics, Ltd." The defendant observes that discovery is not yet complete.

6. The defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate. Moreover the product catalog provided by plaintiff is from Huaguang Ceramics Group, Lt. and Shandong Zibo. The defendant has not been provided

any information on the relationship, if any, between Shandong Linyi or Huaguang Cermaics Company Ltd. and Shandong Zibo.

7.   The defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate.

8.   Denies that Series 209 is the "Savannah Endeavor Mug." Avers that in Marck's product catalog "Your Complete Source," Series 209 is titled "Sante Fe Endeavor." Otherwise, admits that the series numbers appearing in this statement are included on the invoices for the subject entries with various suffixes, and that based on Marck's product catalogue, these series numbers correspond to the descriptive names set forth in plaintiff's statement. Defendant admits that the styles listed in this request are those plaintiff set forth as the mugs it is litigating in the subject action. Avers however, that only certain colors of each listed style are at issue in the instant action.

9.   Admits.

10. Denies.

11. Defendant objects as plaintiff fails to define "genuine." To the extent a response is required, admits that Exhibit 1 appended to plaintiff's Request for Admissions is an accurate print-out from the current International Tableware website.

12.-21.     Defendant objects to this request as plaintiff failed to define what it contends constitutes the "Cancun pattern." To the extent a response is required, the defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny

whether these items constitute a "pattern" as the term is used in the tariff schedule.  Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate.  Avers that, despite requesting samples of the "Cancun Set" in its discovery requests, defendant was not provided a sample of the alleged set.  Additionally, admits that the items in these requests are listed in Exhibit 1, attached to plaintiff's Request for Admissions, as being "Cancun" trademarked items.

22. Defendant objects to this request as vague.  To the extent a response is required the Defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny whether Marck has/or had any plates closer in size to 26.7 cm. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate.

23. Defendant objects to this request as vague.  To the extent a response is required the Defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny whether Marck has/or had any plates closer in size to15.3 cm. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate.

24. Defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny whether "Item CA-1-CB" is a teacup and whether "CA-2-CB" is its matching saucer.  Aver that in Marck's catalog, item "Ca-1-CB" is listed as a "7 oz Tall Cup." Admits that item "CA-2-CB" is listed in Marck's catalog as a saucer.

25. Defendant objects to this request as vague.  To the extent a response is required the

defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny whether Marck has/or had any bowls closer in size to 17.8 cm. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate.

26. Defendant objects to this request as vague.  To the extent a response is required the defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny whether Marck has/or had any bowls closer in size to 12.7 cm. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate.

27. Defendant objects to this request as vague.  To the extent a response is required the defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny whether Marck has/or had any platter closer in size to 38.1 cm. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate.

28. Defendant objects to this request as vague.  To the extent a response is required the defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny whether Marck has/or had any bowls closer in size to 25.4 cm. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate.

29. Defendant objects to this request as vague.  To the extent a response is required the defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny whether Marck has/or had any larger capacity sugar bowls. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate.

30.  Defendant objects to this request as vague.  To the extent a response is required the defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny whether Marck has/or had any larger capacity sugar bowls. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate.

31. The defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate.  Moreover, while the defendant, over plaintiff's objection, was provided with a listing of the "first- purchasers" of the mugs and cups, the defendant was not provided information about the end purchaser of the mugs and cups.

32.  Defendant objects to this request as plaintiff has failed to define what is meant by the phrase "pattern." Otherwise, admits that the "81015 Cancun El Grande" mug is described as a "Cancun" trademarked item.  However, denies any inference that the "81015" mugs are associated with other "Cancun" trademarked items as the "81015" mugs do not have the "CA" or "CAN" pre-fix associated with other "Cancun" items listed in Marck's catalog.

33. The defendant observes that discovery is not yet complete. The defendant has made

a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate. Avers that plaintiff stated in its response to the defendant's Second Interrogatories and Requests for Production that the mugs and cups at issue were not sublimated upon importation or at the time of shipment to the "first-purchaser." Defendant was not provided information concerning whether the mugs may have been sublimated thereafter.

34. The defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate. Avers that plaintiff stated in its response to the defendant's Second Interrogatories and Requests for Production that "[t]he sole cup imprinted with a logo at the time of importation in Niceton invoice number NT-06/3531A line item '212-07 BDFA Bank of America stoneware mug.'" Defendant was not provided information concerning whether the mugs may have been imprinted thereafter.

35. Defendant objects to this request as plaintiff has failed to define what is meant by the phrase "pattern." To the extent a response is required, denies.

36.-46. Defendant objects to this request as plaintiff has failed to define what is meant by the term "set." To the extent a response is required, the defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate. Moreover, avers that Exhibit 2 attached to plaintiff's Requests for Admissions appears to have been created

by an unknown individual from undisclosed business records for purposes of this litigation. Further, many of the "pcs per set" on "Exhibit 2"  do not match the "Case Pack" size on Exhibit 1 attached to plaintiff's Request for Admissions.

47-48.  Defendant objects to this request as plaintiff has failed to define what is meant by the term "pattern." To the extent a response is required, the defendant observes that discovery is not yet complete.  The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny these statements.  Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate. Otherwise, admits that the items in these requests are listed in Exhibit 1, attached to plaintiff's Request for Admissions, as being "Cancun" trademarked items.  Avers that, despite requesting samples of the "Cancun Set" in its discovery requests, defendant was not provided a sample of the alleged "Cancun" set.

49.  The Defendant observes that discovery is not yet complete. The defendant has made a reasonable inquiry but the information known or readily obtainable is insufficient to enable the defendant to admit or deny. Given that discovery is not complete, the defendant reserves its right to supplement this response if appropriate.  Moreover, avers that Exhibit 2 attached to plaintiff's Requests for Admissions appears to have been created by an unknown individual from undisclosed business records for purposes of this litigation.  Further, many of the "pcs per set" on "Exhibit 2" do not match the "Case Pack" size on Exhibit 1 attached to plaintiff's Request for Admissions.

Defendant's response to Plaintiff's Request for Admissions in Court 08-00306 cont:

Respectfully submitted,

TONY WEST
Assistant Attorney General

BARBARA S. WILLIAMS
Attorney in Charge
International Trade Field Office

JASON M. KENNER
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, New York 10278
Attorneys for Defendant
Tel. No. 212-264-9230 or 9236

Dated: July 25, 2011

I, Jason M. Kenner, the undersigned agent for the United States, having prepared the foregoing responses, do hereby declare upon information and belief, under the penalties of perjury, that the responses are true and correct.

<u>CERTIFICATE OF SERVICE BY MAIL</u>

JASON M. KENNER certifies that I am a trial attorney in the office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, with offices located at 26 Federal Plaza, New York, NY 10278, and that on July 25, 2011, on behalf of the United States, defendant herein, I caused the annexed responses to be served upon:

      Edmund Maciorowski, Esq.
      101 West Long Lake Road
      Bloomfield Hills, MI 48304

the attorney(s) for the plaintiff(s) herein, by the deposit of a copy thereof in a United States mail receptacle, properly enclosed in a securely closed envelope, duly franked or postage prepaid, addressed to said attorney(s) as above indicated.

                     ————————————————
                     JASON M. KENNER



1 of 1 DOCUMENT

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

1998 U.S. CUSTOM NY LEXIS 6403; NY D80779

August 11, 1998

**CORE TERMS:** charger, plate, stoneware, plastic, classification, merchandise, kitchenware, tableware, diameter, ceramic, food, safe

**DOCUMENT-NO:** [*1]  CLA-2-39:RR:NC:SP:222 D80779

**CATEGORY:** Classification

**TARIFF-NO:** 3924.10.2000

Ms. Marianne Miranda
Federated Merchandising Group
1440 Broadway
New York, NY 10018

**REFERENCE:** The tariff classification of a plastic charger from China and a stoneware charger from Portugal.

Dear Ms. Miranda:

In your letter dated July 14, 1998, you requested a tariff classification ruling.

You have submitted two samples of charger plates.

The first sample is made of plastic and it is identified as item #2005P625. It is Prussian blue on the top and black on the bottom. The charger plate measures 12 inches in diameter. This type of plate is placed under the soup or dinner plate to avoid spills. In your letter of inquiry, you state that an indelible marking on the back states in part "not food safe".

The second sample is identified as item #70631688. This charger plate measures 12 inches in diameter. It is made of stoneware. Your letter of inquiry states that the stoneware charger is food safe.

We are unable to render a classification on item #70631688, the stoneware charger at this time. The following information is required:

(1) Please provide the entered/fob value for this ceramic charger.

(2) In order to verify that this charger [*2] is "available in specified sets," please identify the pattern of the instant ceramic article and submit a manufacturer's affidavit which lists all of the items in the 77 piece set including their sizes and values that are in the same pattern as the subject merchandise.

The samples are returned as you requested.

The applicable subheading for the plastic charger will be 3924.10.2000, Harmonized Tariff Schedule of the United States (HTS), which provides for tableware, kitchenware, other household articles...of plastics: tableware and kitchenware: plates,...serving dishes and platters. The rate of duty will be 6.6 percent ad valorem.

This ruling is being issued under the provisions of Part 177 of the Customs Regulations (19 C.F.R. 177).



EXHIBIT   4

A copy of the ruling or the control number indicated above should be provided with the entry documents filed at the time this merchandise is imported. If you have any questions regarding the ruling, contact National Import Specialist Alice Masterson at 212-466-5892 or George Kalkines at 212-466-5794.

**ISSUED-BY:** Robert B. Swierupski
Director,
National Commodity
Specialist Division

CUSTOMS SERVICE DISCLAIMER: Inclusion of a Customs ruling in LEXIS does not constitute [*3] publication of the ruling under 19 CFR 177.10(b).An established and uniform practice is created for Customs rulings only by full-text publication in the Customs Bulletin and only if the ruling concerns a rate of duty or change.

**Legal Topics:**

For related research and practice materials, see the following legal topics:
GovernmentsAgriculture & FoodProcessing, Storage & DistributionInternational Trade LawImports & ExportsClassification of MerchandiseHarmonized Tariff Schedule

Excerpt from the Seventh Supplemental Report of August 14, 1963

## C. Additional Explanatory Notes and Background Materials

(97)

EXHIBIT 5

Item 353.50 - Ornamented fabrics. The status of fabrics in the piece with a braid attached to the selvage is subject to a different test under this item than under the applicable existing tariff provisions. The existing requirement that the article merely be "in part of" braid is less exacting. Under the new provision, the braid must in fact ornament the fabric so that it becomes a type of ornamented fabric in an acceptable trade sense. This would normally call for repetitive ornamentation throughout the length of the piece goods, not so affixed that it would in normal disposition be trimmed off or hidden.


Part 1, schedule 4 - Benzenoid chemicals. The terms "manufactured in whole or in part from", "in whole or in part of" in the headnotes and article descriptions are subject to the de minimis rule set forth in general headnote 9(f). The provision for "mixtures" in item 409.00 is less specific than the other descriptions in part 1C and does not compete with them. For example, a drug which is a mixture is more specifically covered by the provisions for "drugs" ; a color, dye, or stain, which is a mixture is more specifically covered by the provisions for "Colors, dyes, stains".


Part 2C, schedule 5 - Table, Kitchen, Household, Art and Ornamental Pottery. The term "of the size nearest to" in headnote 2(b) of this subpart means either more or less than the dimension specified, and within a rather wide range. For example, as indicated in the original explanatory notes on page 84, "the size nearest to 6 inches in maximum dimension" may actually be a salad plate of more than 8-inch diameter. The size nearest to 10-1/2 inches in maximum dimension is intended to designate a dinner plate, however, and even though any plate over 8-1/4 inches in diameter would be nearer to 10-1/2 inches than to 6 inches in diameter, it could hardly be considered to be a dinner plate unless it were over 9 inches in maximum dimension. The term "maximum dimension" means the maximum straight-line distance from edge to edge across the face or top of the article whose dimension is specified.

In the same headnote the term "teacups" refers to cups usually of 7 to 9 fluid ounce capacity. If beverage cups of more than one size are sold or offered for sale in the same pattern the term "teacup" would apply to the size having a capacity nearest to 8 fluid ounces.

The phrase "in the same pattern" in the headnotes to this subpart refers to articles in coordinated shapes, colors, or decorations, including plain white articles, designed to be used together as sets.

| Item | Stat. Suf- fix | Articles | Units of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | Special | 2 |
| | | If either soups or fruits are not sold or offered for sale, 12 cereals of the size nearest to 6 inches in maximum dimension, sold or offered for sale, shall be substituted therefor. | | | | |
| | | (c) The percentage of water absorption of cast and jiggered ceramic articles of the same pattern, which are "available in specified sets" and which are imported together in a ratio of at least 5 jiggered articles to 1 cast article in the same shipment shall be the average water absorption of such cast and jiggered articles, of the same pattern in the shipment, which average absorption shall be deemed to be equivalent to 5 percent of the water absorption of a representative sample of such cast articles plus 95 percent of the water absorption of a representative sample of such jiggered articles. | | | | |
| | | 3.  In those provisions of this part which classify merchandise according to the value of each "article", an article is a single tariff entity which may consist of more than one piece. For example, a vegetable dish and its cover, or a beverage pot and its lid, imported in the same shipment, constitute an article. | | | | |
| | | Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients: | | | | |
| 533.11 | 00 | Of coarse-grained earthenware, or of coarse-grained stoneware................... | Doz..... | Free | | 15% ad val. |
| 533.15 | 00 | Of fine-grained earthenware, whether or not decorated, having a reddish-colored body and a lustrous glaze which, on teapots, may be any color, but which, on other articles, must be mottled, streaked, or solidly colored brown to black with metallic oxide or salt......... | Doz..... | 2.5% ad val. | Free (A,E,I) | 25% ad val. |
| | | Of fine-grained earthenware (except articles provided for in item 533.15) or of fine-grained stoneware: | | | | |
| 533.20 | 00 | Hotel or restaurant ware and other ware not household ware......................... | Doz.pcs. | 35% ad/val. | Free (E,I) | 55% ad val. |
| 533.22 | 00 | Household ware available in specified sets: In any pattern for which the aggregate value of the articles listed in headnote 2(b) of this subpart is not over $38................... | Doz.pcs. | 11.5% ad val. | Free (E,I) | 55% ad val. |
| 533.24 | 00 | In any pattern for which the aggregate value of the articles listed in headnote 2(b) of this subpart is over $38.... | Doz.pcs. | 4.5% ad val. | Free (E,I) | 55% ad val. |

*Exhibit 6*

TARIFF SCHEDULES OF THE UNITED STATES ANNOTATED (1987)

SCHEDULE 5. - NONMETALLIC MINERALS AND PRODUCTS
Part 2. - Ceramic Products

Page 5-21

5 - 2 - C

| Item | Stat. Suf- fix | Articles | Units of Quantity | Rates of Duty | | |
|------|------|------|------|------|------|------|
| | | | | 1 | Special | 2 |
| | | **Subpart C. - Table, Kitchen, Household, Art and Ornamental Pottery** | | | | |
| | | Subpart C headnotes: | | | | |
| | | 1. This subpart covers ceramic articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients; and certain smokers', household, and art and ornamental articles of ceramic ware. This subpart does not cover — (i) smokers' articles provided for in part 9B of schedule 7; (ii) other articles specifically provided for in schedule 7 or elsewhere in the schedules. | | | | |
| | | 2. (a) For the purposes of this subpart, the term "available in specified sets" (items 533.22, 533.24, 533.62, and 533.64) embraces plates, cups, saucers, and other articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients, which are sold or offered for sale in the same pattern, but no article is classifiable as being "available in specified sets" unless it is of a pattern in which at least the articles listed below in (b) of this headnote are sold or offered for sale. (b) If each of the following articles is sold or offered for sale in the same pattern, the classification hereunder in items 533.22, 533.24, 533.62, or 533.64, of all articles of such pattern shall be governed by the aggregate value of the following articles in the quantities indicated, as determined by the appropriate customs officer under section 402 of the Tariff Act of 1930, as amended, whether or not such articles are imported in the same shipment: 12 plates of the size nearest to 10.5 inches in maximum dimension, sold or offered for sale, 12 plates of the size nearest to 6 inches in maximum dimension, sold or offered for sale, 12 tea cups and their saucers, sold or offered for sale, 12 soups of the size nearest to 7 inches in maximum dimension, sold or offered for sale, 12 fruits of the size nearest to 5 inches in maximum dimension, sold or offered for sale, 1 platter or chop dish of the size nearest to 15 inches in maximum dimension, sold or offered for sale, 1 open vegetable dish or bowl of the size nearest to 10 inches in maximum dimension, sold or offered for sale, 1 sugar of largest capacity, sold or offered for sale, 1 creamer of largest capacity, sold or offered for sale. | | | | |