Slip Op. 15-62

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                          :
G.G. MARCK & ASSOCIATES, INC.,            :
                                          :
            Plaintiff,                    :
                                          :        Before: Richard K. Eaton, Judge
                    v.                    :
                                          :        Court No. 08-00306
UNITED STATES,                            :
                                          :
            Defendant.                    :
_____ :
```

## OPINION

[In this classification case, defendant's motion for summary judgment is granted, in part, and plaintiff's cross-motion for summary judgment is granted, in part.]

Dated: June 17, 2015

*Edmund Maciorowski*, Edmund Maciorowski P.C., of Bloomfield Hills, MI, argued for plaintiff.

*Jason M. Kenner*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, NY, argued for defendant. With him on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Amy M. Rubin*, Acting Assistant Director, and *Barbara S. Williams*, Attorney in Charge. Of counsel on the brief was *Beth Brotman*, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection.

EATON, Judge: Before the court are the cross-motions for summary judgment of

plaintiff G.G. Marck & Associates, Inc. ("plaintiff" or "Marck") and defendant United States

("defendant") on behalf of the United States Customs and Border Protection Agency

("Customs"). Def.'s Mot. for Summ. J. (ECF Dkt. No. 57); Pl.'s Am. Mot. for Summ. J. (ECF

Dkt. No. 70). The court has jurisdiction pursuant to 28 U.S.C. § 1581(a). At issue is the proper

classification of ninety-one cups and mugs imported by plaintiff between August 3, 2006 and

September 18, 2006.  *See* Summons at 1, 3 (ECF Dkt. No. 1).

Plaintiff commenced this lawsuit after its timely-filed protest was denied by Customs and

the assessed duties were paid.  *See* Compl. ¶¶ 2, 3 (ECF Dkt. No. 9); Answer ¶¶ 2, 3 (ECF Dkt.

No. 10).  Plaintiff initially pursued the issues presented here in court number 06-00094 as a test

case, but moved for voluntary dismissal on May 18, 2010 following the filing of motions for

summary judgment.  *See* Stipulation of Dismissal, *Marck & Assocs., Inc. v. United States*, Ct.

No. 06-00094 (May 18, 2010), ECF Dkt. No. 97; Pl.'s Mot. for Summ. J., *Marck & Assocs., Inc.

v. United States*, Ct. No. 06-00094 (Dec. 15, 2009), ECF Dkt. No. 83; Def.'s Mot. for Summ. J.,

*Marck & Assocs., Inc. v. United States*, Ct. No. 06-00094 (Dec. 10, 2009), ECF Dkt. No. 80.  On

September 7, 2010, the court designated this matter a test case pursuant to USCIT Rule 84 and

suspended related court actions filed by plaintiff between March 31, 2006 and July 26, 2010.[1]

Order (ECF Dkt. No. 16).  Seven additional lawsuits, filed subsequently by plaintiff, have since

been suspended pending the disposition of this test case.[2]

For the reasons set forth below, defendant's motion for summary judgment is granted, in

part, and plaintiff's motion for summary judgment is granted, in part, and the court finds that (1)

five articles are properly classified under Harmonized Tariff Schedule of the United States

("HTSUS") subheading 6912.00.39, as "Ceramic tableware, kitchenware, other household

---

[1]     Twenty-three actions filed between March 31, 2006 and July 26, 2010 were suspended (court numbers listed chronologically by the date they were filed): 06-00107, 06-00264, 06-00303, 06-00346, 07-00146, 07-00405, 08-00075, 08-00104, 08-00105, 08-00295, 08-00300, 08-00327, 08-00365, 08-00423, 09-00035, 09-00105, 09-00190, 09-00263, 09-00371, 09-00542, 10-00022, 10-00154, and 10-00216.  *See* Order (ECF Dkt. No. 16).

[2]     The seven additional lawsuits filed, that have since been suspended pending the disposition of this test case, are (court numbers listed chronologically by the date they were filed) 10-00342, 11-00032, 11-00186, 11-00531, 12-00128, 12-00399, and 13-00221.

articles and toilet articles, other than of porcelain or china" that are "Available in specified

sets,"[3] (2) fifty-eight articles are properly classified under HTSUS subheading 6912.00.44,

"Mugs and other steins,"[4] and (3) twenty-eight articles are properly classified under HTSUS

subheading 6912.00.48, "Other."[5]


## BACKGROUND

The facts described below have been taken from the parties' stipulated facts, admitted

portions of plaintiff's USCIT Rule 56(h) statement,[6] and findings based on record evidence on

which no reasonable fact-finder could come to an opposite conclusion. *See Chrysler Corp. v.*

*United States*, 24 CIT 75, 91, 87 F. Supp. 2d 1339, 1354 (2000).  Marck, a distributer of ceramic

tableware, is the importer of record of the contested merchandise, stoneware cups and mugs,

from Chinese manufacturer Shandong Zibo Niceton-Marck Huaguang Ceramics Ltd.

("Huaguang" or the "manufacturer").  *See* Pl.'s Statement of Material Facts as to Which There

Are No Genuine Issues to Be Tried ¶¶ 111, 112 (ECF Dkt. No. 70) ("Pl.'s Rule 56(h)

---

[3]      HTSUS subheading 6912.00.39 reads as follows: "Available in specified sets: . . . In any pattern for which the aggregate value of the articles listed in additional U.S. note 6(b) of this chapter is over $38."  Subheading 6912.00.39 of Chapter 69, HTSUS (2006).

[4]      HTSUS subheading 6912.00.44 covers "Mugs and other steins."  Subheading 6912.00.44 of Chapter 69, HTSUS (2006).

[5]      HTSUS subheading 6912.00.48 covers "Other."  Subheading 6912.00.48 of Chapter 69, HTSUS (2006).

[6]      Because the United States Court of International Trade amendment to USCIT Rule 56(h) eliminated the requirement that parties must submit a statement of material facts not in dispute, defendant did not submit a USCIT Rule 56(h) statement of its own.  *See* Def.'s Resp. to Pl.'s Separate Statement of Undisputed Material Facts 1 (ECF Dkt. No. 81).  Nonetheless, plaintiff submitted a statement of material facts, and defendant filed a reply.  *See* Pl.'s Statement of Material Facts as to Which There Are No Genuine Issues to Be Tried (ECF Dkt. No. 70); Def.'s Resp. to Pl.'s Separate Statement of Undisputed Material Facts 1 n.1.

Statement"). The items are imported separately and not as sets. *See* Mem. in Supp. of Def.'s

Mot. for Summ. J. (ECF Dkt. No. 57) ("Def.'s Br."), Ex. 1 at 26.

At liquidation, Customs classified all of the merchandise under Heading 6912 of the

HTSUS ("Ceramic tableware, kitchenware, other household articles and toilet articles, other than

of porcelain or china"). *See* Summons at 2. Customs, however, classified merchandise it found

to be "mugs" under subheading 6912.00.44 as "Mugs and other steins" at 10 percent *ad valorem*,

and those items it found to be "cups" under subheading 6912.00.48 as "Other" at 9.8 percent *ad*

*valorem*. *See* Summons at 2; App. 4 to Pl.'s Br. in Supp. of Mot. for Summ. J., Aff. of Raymond

Guan ("Guan Aff."), Ex. 1 ("Niceton Invoices").

Marck timely protested Customs' classifications of the merchandise and urged that its

merchandise[7] should have been classified under subheading 6912.00.39 at 4.5 percent *ad*

*valorem*:

|  6912.00 | Ceramic tableware, kitchenware, other household articles and toilet articles, other than of porcelain or china: |
|---|---|
| | Tableware and kitchenware: |
| . . . | |
| | Other: |
| . . . | |
| | Other: |
| | *Available in specified sets*: |
| . . . | |
| 6912.00.39 | *In any pattern for which the aggregate value of the articles listed in additional U.S. note 6(b) of this chapter is over $38* |

*See* Subheading 6912.00.39 of Chapter 69, HTSUS (2006) (emphasis added); Compl. ¶ 2;

Answer ¶ 2; Niceton Invoices.

---

[7]        The twenty-two style numbers of the ninety-one contested mugs and cups at issue
are 1015, 7168, 286, 39, 3476, 414, 481, 67, 803, 4110, 1209, 1776, 212, 3414, 1376, 1950, 209,
7101, 1276, 81015, 617, and 5176. Pl.'s Rule 56(h) Statement ¶ 19.

The phrase "[a]vailable in specified sets" is the subject of the Additional U.S. Notes

("U.S. Notes"), which form a part of the HTSUS.[8]  *See* Additional U.S. Note 6(b), HTSUS

("U.S. Note 6"); *Del Monte Corp. v. United States*, 730 F.3d 1352, 1355 (Fed. Cir. 2013)

("Included among the specified 'notes' are Additional U.S. Notes, which Customs describes as

'legal notes that provide definitions or information on the scope of the pertinent provisions or set

additional requirements for classification purposes' and which are 'considered to be statutory

provisions of law for all purposes.'" (citation omitted) (quoting U.S. CUSTOMS & BORDER PROT.,

WHAT EVERY MEMBER OF THE TRADE COMMUNITY SHOULD KNOW ABOUT: TARIFF

CLASSIFICATION 32 (2004))).  As shall be explained in more detail hereinafter, in accordance

with U.S. Note 6(b), the inclusion under the phrase "available in specified sets" requires that

specific articles of particular sizes (e.g., plates, tea cups, soups, fruits, a platter or chop dish, an

open vegetable dish or bowl, a sugar, and a creamer) be "sold or offered for sale in the same

pattern."  *See* U.S. Note 6(a), (b).

As is relevant here, Marck offers a number of different lines of dinnerware merchandise,

one of which it describes as falling under the trademark "Cancun™ Vitrified" ("Cancun").  *See*

Def.'s Br., Ex. 5 at 48 ("Marck Catalog").  In Marck's catalog, "Cancun" trademarked items are

offered in nine basic solid colors: Stanford red, black, cobalt, ocean blue, California orange,

lemon, hunter green, white, and natural.[9]  *See* Marck Catalog at Marck & Associates Color

---

[8]     While the Explanatory Notes are non-binding and apply to the interpretation of
the Harmonized Tariff Schedule and the HTSUS, the U.S. Notes, which are statutory provisions,
relate only to the interpretation of the HTSUS in the United States.  *See Del Monte Corp. v.
United States*, 730 F.3d 1352, 1355 (Fed. Cir. 2013); *Kahrs Int'l, Inc. v. United States*, 713 F.3d
640, 645 (Fed. Cir. 2013).

[9]     Marck's 2006 catalog features a "Color Codes" page, which designates a unique
code used to identify the color of each item throughout the catalog.  Marck Catalog at Marck &
                                                                        (footnote continued)

Codes, 49.  Dinnerware items identified by Marck as being covered by the "Cancun" trademark

include the following items: 10 ¼ inch plates, 6 ⅝ inch plates, 7 ounce tall cups, 6 inch saucers,

7 inch bowls, 4 ¾ inch 4 ounce fruit bowls, 13 ¼ inch platters, 10 inch bowls, sugar bowls with

lids, and 14 ounce creamers.  *See* Pl.'s Rule 56(h) Statement ¶ 115.  Although it does not identify

them as part of the "Cancun" line (or any other line), Huaguang, the manufacturer, sells the 10 ¼

inch plates, 6 ⅝ inch plates, 7 ounce tall cups, 6 inch saucers, 7 inch bowls, and 4 ¾ inch 4

ounce fruit bowls in packages of twelve, and the 13 ¼ inch platters, 10 inch bowls, sugar bowls

---

Associates Color Codes ("Marck Color Codes").  Under "Vitrified Colors," color code "296" is labeled "Stanford red" and followed in a parenthesis by the letter "R," color code "04" is labeled "cobalt" and followed in a parenthesis by the letters "CB," color code "210" is labeled "California orange" and followed in a parenthesis by the letter "O," color code "242" is labeled "lemon" and followed in a parenthesis by the letter "Y," and color code "67" is labeled "hunter green" and followed in a parenthesis by the letter "G."  *See* Marck Color Codes.  The 2009–2010 catalog of International Tableware Incorporated ("ITI"), an associate of Marck, however, labels color code "2194" as "red," "04" as "cobalt blue," "210" as "orange," "242" as "yellow," and "67" as "green."  The parties agree, and so does the court, that these four corresponding colors in each catalog reference the same color, and the court finds, based on a review of the invoices, catalogs, and photographs of the contested merchandise that no reasonable fact-finder could conclude otherwise.  Thus, the court adopts the color descriptions as used in ITI's catalog when referencing these particular colors hereinafter: "296" and "2194" will refer to articles that are colored "red," "04" will refer to articles colored "cobalt blue," "210" will refer to articles colored "orange," "242" will refer to articles colored "yellow," and "67" will refer to articles that are colored "green."

Moreover, Marck labels color code "06" in its catalog as "ocean blue," which is followed in a parenthesis by the letters "LB."  *See* Marck Color Codes.  Accordingly, in creating a chart of the contested articles, defendant described the color of article 7168-06 as "ocean blue."  *See* Def.'s Br., Ex. 4 at 8.

ITI's 2009–2010 catalog, however, labels color code "06" as "light blue," and lists "light blue" as one of the "Cancun" trademarked colors.  Def.'s Br. 4, Ex. 6, at 26, 27.  Based on the color description in ITI's catalog, defendant determined that "light blue" is a color of "Cancun" merchandise, and therefore that item 7168-06 is not part of the "Cancun" collection because it exhibits "ocean blue," which is not a color of "Cancun" trademarked merchandise.

Following a review of the invoices, catalogs, and photographs of contested articles, the court finds that a reasonable fact-finder could only conclude that the color descriptions of "light blue" and "ocean blue" reference the same color, identified consistently under color code "06," and are employed interchangeably by Marck and ITI.  Thus, item 7168-06 is, in fact, offered in one of the colors of "Cancun" trademarked merchandise.  The court adopts ITI's description of "light blue" when referencing this particular color (i.e., 06) hereinafter.

with lids, and 14 ounce creamers in packages of one.  *See* Guan Aff. ¶ 22, Ex. 5; App. 5 to Pl.'s

Br. in Supp. of Mot. for Summ. J., Aff. of Christopher Miller ¶ 37, Ex. 5 ("Miller Aff.").  The

total price of any combination of the seventy-seven articles constituting a complete set under the

"Cancun" trademark, at the time of importation, exceeded $38.00.  Pl.'s Rule 56(h) Statement ¶

126.

## STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  USCIT R.

56(c) (2015); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  In the context of a

customs classification case, summary judgment is appropriate when "there is no factual dispute

regarding what the merchandise is."  *Sony Elecs., Inc. v. United States*, 37 CIT __, __, Slip Op.

13-153, at 5 (2013) (citing *Faus Grp., Inc. v. United States*, 581 F.3d 1369, 1372 (Fed. Cir.

2009)).  "When both parties move for summary judgment, the court must evaluate each motion

on its own merits, resolving all reasonable inferences against the party whose motion is under

consideration."  *JVC Co. of Am., Div. of US JVC Corp. v. United States*, 234 F.3d 1348, 1351

(Fed. Cir. 2000) (citing *McKay v. United States*, 199 F.3d 1376, 1380 (Fed. Cir. 1999)).  "When

the moving party has carried its burden under Rule 56(c), its opponent must do more than simply

show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted) (citations omitted).  That is,

"the nonmoving party must come forward with 'specific facts showing that there is a *genuine*

*issue for trial*.'"  *Id.* at 587 (citation omitted) (quoting FED. R. CIV. P. 56(e)).

## DISCUSSION

### I.   LEGAL FRAMEWORK

Classification of imported merchandise involves a two-step inquiry: "first, construe the relevant classification headings; and second, determine under which of the properly construed tariff terms the merchandise at issue falls." *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (citing *Universal Elecs., Inc. v. United States*, 112 F.3d 488, 491 (Fed. Cir. 1997)).   The first step is a question of law and the second step is a question of fact. *See id.* (citing *Universal Elecs.*, 112 F.3d at 491).   Nonetheless, "summary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is." *Id.* (citations omitted).   The plaintiff "has the burden of establishing that the government's classification is wrong," but the court determines "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984).

"The HTSUS General Rules of Interpretation [('GRI')] and the Additional U.S. Rules of Interpretation . . . govern the proper classification of all merchandise and are applied in numerical order." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citing *Baxter Healthcare Corp. of Puerto Rico v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999)). GRI 1 provides, in relevant part, that "the terms of the headings and any relative section or chapter notes" control classification.   "The first step in properly construing a tariff classification term is to determine whether Congress clearly defined that term in either the HTSUS or its legislative history." *Airflow Tech., Inc. v. United States*, 524 F.3d 1287, 1290–91 (Fed. Cir. 2008) (quoting *Russell Stadelman & Co. v. United States*, 242 F.3d 1044, 1048 (Fed. Cir. 2001)) (internal quotation marks omitted).   "Absent contrary legislative intent, HTSUS terms are to be

construed according to their common and commercial meanings, which are presumed to be the same.  A court may rely upon its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Carl Zeiss*, 195 F.3d at 1379 (citing *Simod Am. Corp. v. United States*, 872 F.2d 1572, 1576 (Fed. Cir. 1989); *Baxter*, 182 F.3d at 1337).

Although there is no dispute regarding what the merchandise is in this case (i.e., stoneware tableware), the court must determine (1) under which properly construed HTSUS subheading each item should be classified and (2) which, if any, of the contested articles "are sold or offered for sale in the same pattern" and "available in specified sets."  *See* U.S. Note 6(a). In doing so, the court must address Marck's primary argument, which is that the ninety-one cups and mugs, including those not in the seven colors of "Cancun" trademarked merchandise, are part of the "Cancun" trademark pattern.

## II.    THE CONSTRUCTION OF HTSUS SUBHEADINGS 6912.00.44 AND 6912.00.48

Chapter 69 of the HTSUS encompasses "Ceramic Products," and HTSUS Heading 6912 covers "Ceramic tableware, kitchenware, other household articles and toilet articles, other than of porcelain or china."  The court finds, and the parties agree, that the contested stoneware mugs and cups should be classified under HTSUS Heading 6912 because they are ceramic tableware and neither porcelain nor china.[10]  *See* App. 1 to Pl.'s Br. in Supp. of Mot. for Summ. J., Aff. of

---

[10]     The parties agree that each of the contested cups and mugs are "stoneware," as described in the invoices for each entry of the subject merchandise. *See* Guan Aff., Ex. 1.

The HTSUS distinguishes "stoneware" from other types of ceramic products, such as porcelain, china, chinaware, bone chinaware, and earthenware, and describes "stoneware" as "ceramic ware which contains clay as an essential ingredient, is not commonly white, will absorb

(footnote continued)

Dr. William M. Carty ¶ 5 ("Carty Aff."). The parties disagree, however, under which

subheading these mugs and cups are properly classified, i.e., "under which of the properly

construed tariff terms the merchandise at issue falls." *See Bausch & Lomb*, 148 F.3d at 1365

(citing *Universal Elecs.*, 112 F.3d at 491).

HTSUS subheading 6912.00.44 covers "Mugs and other steins," and subheading

6912.00.48 applies to "Other." The court finds that subheading 6912.00.44, "Mugs and other

steins," is an *eo nomine* provision because it describes the merchandise by name. *See Nidec*

*Corp. v. United States*, 68 F.3d 1333, 1336 (Fed. Cir. 1995) ("[A]n *eo nomine* provision . . .

describes a commodity by a specific name, usually one common in commerce. Absent limiting

language or indicia of contrary legislative intent, such a provision covers all forms of the article."

(citing *Nat'l Advanced Sys. v. United States*, 26 F.3d 1107, 1111 (Fed. Cir. 1994))).

Precisely what constitutes a mug or stein, however, is not made clear by the HTSUS.

Where, as here, the provisions of the HTSUS are unclear and undefined, and the statutory

language remains unchanged in the transition from the Tariff Schedules of the United States

("TSUS")[11] to the HTSUS, prior constructions of the TSUS are "instructive in interpreting the

HTS[US]." *See Pima Western, Inc. v. United States*, 20 CIT 110, 116, 915 F. Supp. 399, 404

(1996) (quoting H.R. Conf. Rep. No. 100-576, at 550 (1988), *reprinted in* 1988 U.S.C.C.A.N.

1547, 1583) (internal quotation marks omitted). The Federal Circuit's predecessor, the United

States Court of Customs and Patent Appeals, in construing the predecessor provisions of

subheadings 533.71 and 533.75 in the TSUS, observed that, although "the definition and general

---

not more than 3 percent of its weight of water, and is naturally opaque (except in very thin
pieces) even when absorption is less than 0.1 percent." *See* U.S. Note 5(a).

[11]     The HTSUS became effective, replacing the TSUS, on January 1, 1989. *See*
*Marubeni Am. Corp. v. United States*, 35 F.3d 530, 532 (Fed. Cir. 1994).

concept of a mug may be fluid and indefinite," there are certain "general characteristics which seem to distinguish a mug from a cup and which do not appear to have varied extensively over the years." *United States v. Nat'l Silver Co.*, 59 CCPA 64, 65, 66, 455 F.2d 593, 594, 595 (1972).[12]  In keeping with this observation, the *National Silver* Court found that, under the TSUS, a "mug" was "either straight-sided or barrel-shaped, measuring about the same across the top as across the bottom, having a flat bottom, heavier than a cup, and not used with a saucer." *Id.* at 66, 455 F.2d at 595 (citing *Ross Prods., Inc. v. United States*, 46 Cust. Ct. 158, 163, C.D. 1976 (1958)).  In comparison, a "cup," the Court held, "designat[es] a bowl-shaped drinking vessel commonly set on a saucer and used for the service of hot liquids."  *Id.* at 67, 455 F.2d at 595 (citing *Ross Prods., Inc. v. United States*, 46 Cust. Ct. 8, 12, C.D. 2226 (1961)).  The *National Silver* Court relied on Webster's Third New International Dictionary (1963) to support its construction of the terms.  For instance, the dictionary provided that a "mug" is "a drinking cup usu[ally] of metal or earthenware and usu[ally] cylindrical with no lip but with a handle." *Id.* at 66, 455 F.2d at 595 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1483 (1963)) (internal quotation marks omitted).

---

[12]        In *National Silver*, the U.S. Court of Customs and Patent Appeals construed the following TSUS provisions:
>     Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients:
> . . .
>        Of nonbone chinaware of subporcelain:
> . . .
>            Household ware not covered by item 533.65, 533.66, 533.68, or 533.69:
>                533.71 *Steins*, *mugs*, candy boxes, decanters, punch bowls, pretzel dishes, tidbit dishes, tiered servers, and bonbon dishes.
>                    Other articles:
> . . .
>                533.75 *Cups* valued over $1.35 but not over $4 per dozen.

*Nat'l Silver*, 59 CCPA at 65, 455 F.2d at 594; 533.75, TSUS (emphasis added); 533.71, TSUS (emphasis added).

Contemporary dictionaries provide substantially similar definitions for a "mug." *See, e.g.*, OXFORD ENGLISH DICTIONARY ONLINE (Oxford University Press Mar. 2015), *available at* http://www.oed.com/view/Entry/123325?rskey=mlAiKE&result=1#eid ("A drinking vessel, freq. cylindrical (and now usually with a handle), generally used without a saucer."); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1483 (2002) ("[A] drinking cup usu[ally] of metal or earthenware and usu[ally] cylindrical with no lip but with a handle."); AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1153 (4th ed. 2000) ("A heavy cylindrical drinking cup usually having a handle.").

Webster's Third New International Dictionary (1963), the dictionary upon which the U.S. Court of Customs and Patent Appeals relied in *National Silver*, defined a "cup" to mean "a usu[ally] open bowl-shaped drinking vessel often having a handle and a stem and a base and sometimes a lid. . . . [A] handled vessel of china or glass that is set on a saucer and used for hot liquids (as coffee, tea, or soup)." *Nat'l Silver*, 59 CCPA at 66, 455 F.2d at 595 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 554 (1963)) (internal quotation marks omitted); *see also Imports, Inc. v. United States*, 55 Cust. Ct. 506, 507, Abs. 69681 (1965) ("Standing alone, 'cup' has been held to designate 'a bowl-shaped drinking vessel commonly set on a saucer and used for the service of hot liquids, such as tea, coffee, or soup.'" (quoting *Ross Prods.*, 46 Cust. Ct. at 12, C.D. 2226)).

As with mugs, contemporary dictionary definitions provide similar definitions for what constitutes a "cup." *See, e.g.*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 554 (2002) ("[A] usu[ally] open bowl-shaped drinking vessel often having a handle and a stem and base and sometimes a lid. . . . [A] handled vessel of china or glass that is set on a saucer and used for hot liquids (as coffee, tea, or soup)."); AMERICAN

HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 444 (4th ed. 2000) ("A small open container, usually with a flat bottom and a handle, used for drinking."); OXFORD ENGLISH DICTIONARY ONLINE (Oxford University Press Mar. 2015), *available at* http://www.oed.com/view/Entry/1233 25?result=1&rskey=mlAiKE& ("A small open vessel for liquids, usually of hemispherical or hemispheroidal shape, with or without a handle; a drinking-vessel.  The common form of a cup (*e.g.* a tea-cup or coffee-cup) has no stem; but the larger and more ornamental forms (*e.g.* a wine-cup or chalice) may have a stem and foot, as also a lid or cover; in such case *cup* is sometimes applied specifically to the concave part that receives the liquid.").

"[I]n all cases involving statutory construction," a court's "starting point must be the language employed by Congress," and the court "assume[s] 'that the legislative purpose is expressed by the ordinary meaning of the words used.'"  *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337 (1979); *Richards v. United States*, 369 U.S. 1, 9 (1962)) (internal quotation marks omitted).  Based on its review of the U.S. Court of Customs and Patent Appeals' holding, relevant dictionary definitions, and its own understanding of the common meaning of the words, the court adopts the construction of the terms "mug" and "cup" as used in *National Silver*.  Thus, for classification purposes under the HTSUS, unless properly classified elsewhere, articles found to be "either straight-sided or barrel-shaped, measuring about the same across the top as across the bottom, having a flat bottom, heavier than a cup, and not used with a saucer," are properly classified as "Mugs and other steins" under subheading 6912.00.44, and articles found to be "bowl-shaped drinking vessel[s] commonly set on a saucer and used for the service of hot liquids," are not mugs and are thus properly classified under subheading 6912.00.48, "Other," given the absence of a more specific subheading for this type of merchandise.

### III.   THE CONSTRUCTION OF HTSUS SUBHEADING 6912.00.39

Plaintiff insists that, while if sold separately, its mugs and cups would properly be

classified under HTSUS 6912.00.44 ("Mugs and other steins") and 6912.00.48 ("Other")

respectively, because they are offered for sale and sold with other ceramic items in the same

pattern and thus as sets, they are properly classified under HTSUS subheading 6912.00.39.  As

has been noted, this subheading covers "Other: Available in specified sets: In any pattern for

which the aggregate value of the articles listed in additional U.S. note 6(b) of this chapter is over

$38."

The statutory language in U.S. Note 6(a) explains that "available in specified sets"

embraces plates, cups, saucers and other articles principally used for preparing,
serving or storing food or beverages . . . which are sold or offered for sale *in the
same pattern*, but no article is classifiable as being 'available in specified sets'
unless it is of a pattern in which at least *the articles listed below in (b)* of this note
are sold or offered for sale.

U.S. Note 6(a) (emphasis added).

Importantly, U.S. Note 6(b) specifies that, where

each of the following articles is sold or offered for sale in the same pattern, the
classification hereunder in subheading[] . . . 6912.00.39, of all articles of such
pattern shall be governed by the aggregate value of the following articles in the
quantities indicated . . . whether or not such articles are imported in the same
shipment:
12 plates of the size nearest to 26.7 cm [(10.5 inches)] in maximum dimension,
    sold or offered for sale,
12 plates of the size nearest to 15.3 cm [(6.0 inches)] in maximum dimension,
    sold or offered for sale,
12 tea cups and their saucers, sold or offered for sale,
12 soups of the size nearest to 17.8 cm [(7.0 inches)] in maximum dimension,
    sold or offered for sale,
12 fruits of the size nearest to 12.7 cm [(5.0 inches)] in maximum dimension,
    sold or offered for sale,
1 platter or chop dish of the size nearest to 38.1 cm [(15.0 inches)] in
    maximum dimension, sold or offered for sale,
1 open vegetable dish or bowl of the size nearest to 25.4 cm [(10.0 inches)] in
    maximum dimension, sold or offered for sale,

> 1 sugar of largest capacity, sold or offered for sale,
> 1 creamer of largest capacity, sold or offered for sale.
> If either soups or fruits are not sold or offered for sale, 12 cereals of the size
> nearest to 15.3 cm in maximum dimension, sold or offered for sale, shall be
> substituted therefor.

U.S. Note 6(b). Thus, in order for merchandise to be classified under subheading 6912.00.39, it

must be of a single pattern and each of the specified pieces must be sold or offered for sale in

that pattern.

It is undisputed that articles advertised in Marck's catalog under the "Cancun" trademark

constitute a "specified set" as enumerated under U.S. Note 6(b) in two of the colors (i.e., cobalt

blue and light blue), because each of the required dinnerware pieces satisfy the specifications set

forth in U.S. Note 6(b) (i.e., are sold or offered for sale in the same pattern), are ceramic

tableware other than porcelain or china, and the set has an aggregate value over $38.00. In other

words, the parties agree, and so does the court, that (1) the articles sold in the cobalt blue color,

identified by Marck under the "Cancun" trademark, are in the same pattern and (2) each of the

items necessary to constitute a set under U.S. Note 6(b) are offered for sale in the same cobalt

blue color. It is equally undisputed that those articles sold in the light blue color constitute

another set.[13]

With respect to the remaining items, the primary issue hinges on the proper construction

of the language "in the same pattern" in U.S. Note 6(a). That is, because the required creamer

and sugar are only manufactured in the two solid blue colors (i.e., cobalt blue and light blue), the

---

[13]    Defendant concedes that those items sold in "light blue" constitute a complete set
and satisfy U.S. Note 6(b). As noted previously, however, Marck labels those items offered for
sale by International Tableware Incorporated in the color "light blue," as in an "ocean blue"
color. Thus, although both companies employ a different term by which to describe the color of
these items, it is clear, and no reasonable fact-finder could find otherwise, that the color
descriptions of "light blue" and "ocean blue" reference the same color and thus the same
merchandise.

court must decide whether the creamer and sugar are "in the same pattern" as Marck's

merchandise offered for sale in other colors, in more than one color, or with surface designs.

In the absence of a statutory definition for a term, or an Explanatory Note to clarify a

term's meaning, legislative history may be considered in resolving a classification dispute. *See*

*Airflow Tech.*, 524 F.3d at 1290–91; *NEC Elecs., Inc. v. United States*, 144 F.3d 788, 791 (Fed.

Cir. 1998). The term "pattern" and the phrase "in the same pattern" are not defined in the

HTSUS. As noted, where, as here, the provisions of the HTSUS are ambiguous, and the

statutory language remains unchanged in the transition from the TSUS to the HTSUS, prior

constructions of the TSUS are "instructive in interpreting the HTS[US]." *See Pima Western*, 20

CIT at 116, 915 F. Supp. at 404 (quoting H.R. CONF. REP. NO. 100-576, at 550, *reprinted in* 1988

U.S.C.C.A.N. at 1583) (internal quotation marks omitted). The Tariff Classification Study

("TCS") is "part of the legislative history of the TSUS," and may be used "to aid the

interpretation of [the] HTSUS." *Libbey Glass, Div. of Owens-Illinois, Inc. v. United States*, 921

F.2d 1263, 1265 (Fed. Cir. 1990); *Pima Western*, 20 CIT at 117, 915 F. Supp. at 405 (citing

*Beloit Corp. v. United States*, 18 CIT 67, 74, 843 F. Supp. 1489, 1495 (1994)).

The phrase "in the same pattern" is undefined by the HTSUS, by the Explanatory Notes,

by this Court or its predecessor, or by the Federal Circuit or its predecessor's case law. Because

the language of HTSUS subheading 6912.00.39 remained unchanged in the transition from the

TSUS to the HTSUS, however, the TCS, Seventh Supplemental Report's (Aug. 14, 1963)

definition is instructive for interpreting the language of the tariff subheading. That is, the TCS,

in this instance, provides insight into Congress's intended construction for the predecessor TSUS

subheading and hence the unchanged language found in HTSUS subheading 6912.00.39. The

TCS defined "in the same pattern" to mean "articles in coordinated shapes, colors, or

decorations, including plain white articles, designed to be used together as sets." TARIFF

CLASSIFICATION STUDY, SEVENTH SUPPLEMENTAL REPORT 100 (Aug. 14, 1963) ("TCS

REPORT").

Not only is the definition useful for discerning Congress's intent, it also confirms that

Congress did not wish to depart from the common understanding of the phrase "in the same

pattern" and the term "pattern." *See, e.g.*, MACMILLAN DICTIONARY, http://www.macmillan

dictionary.com/us/dictionary/american/pattern_1 (last visited June 1, 2015) ("[A] set of lines,

shapes, or colors that are repeated regularly.").

Based on this definition and the common understanding of the words, the court finds that

Congress intended that subheading 6912.00.39 cover only those items that (1) coordinate in

shape, color, and[14] decoration, and (2) were designed to be used as a set.[15] *See* TCS REPORT 100

---

[14]        While the TCS uses "or" rather than "and" with respect to shape, color, and
decoration, it is apparent to the court that a mechanistic approach was not the purpose of the
drafters.  Thus, in large measure, a pattern, like pornography, is something that you know when
you see it.  *See Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring) ("I shall
not today attempt further to define the kinds of material I understand to be embraced within that
shorthand description; and perhaps I could never succeed in intelligibly doing so.  But I know it
when I see it, and the motion picture involved in this case is not that.").

[15]        Plaintiff relies on prior Customs ruling letters to further support its claim that the
contested articles are properly classified under subheading 6912.00.39 ("Available in specified
sets: In any pattern for which the aggregate value of the articles listed in additional U.S. note
6(b) of this chapter is over $38.").  In Ruling Letter D80779 and Ruling Letter H80584
(collectively, "Ruling Letters"), Customs provided that the provisions of U.S. Note 6(b) were
satisfied by an affidavit from the manufacturer attesting to the sizes and values of the individual
items available in the same pattern as the subject merchandise.  *See* N.Y. Ruling Letter D80779
(Aug. 11, 1998); N.Y. Ruling Letter H80584 (May 17, 2001).  In other words, for plaintiff,
because it submitted affidavits from the Vice-President and Chief Financial Officer of Marck,
which stated that (1) all of the items in the specified set were offered for sale by the manufacturer
at all times and sold to other companies such as Marck, and (2) the "Cancun" dinnerware line
identified the relevant pattern for the specified set, it has fulfilled the requirements set forth in
the Ruling Letters and thus, satisfied the provisions of U.S. Note 6(b).  *See* Pl.'s Br. in Supp. of
Mot. for Summ. J. 13 (ECF Dkt. No. 70); Guan Aff. ¶ 24; Miller Aff. ¶ 37.  The court finds these
                                                                          (footnote continued)

(explaining that articles must be "designed to be used together as sets" to be "in the same

pattern"). In assessing whether articles coordinate in shape, color, and decoration, a court may

rely on record evidence tending to demonstrate that articles are indeed in the same pattern. *See*

USCIT R. 56(c)(1)(A); *United States v. Adaptive MicroSystems, LLC*, 37 CIT __, __, 914 F.

Supp. 2d 1331, 1337 (2013). Further, the court may supplement its inquiry by conducting its

own examination of the merchandise, and depictions of the merchandise, to determine whether

articles are in the same pattern. *See Mattel, Inc. v. United States*, 926 F.2d 1116, 1120 (Fed. Cir.

1991); *Simod*, 872 F.2d at 1578.

In order to determine whether an article was designed to be used as part of a set, the

court's task is to ascertain the manufacturer's or seller's intent. *See* TCS REPORT 100. In

addition to witness testimony, sources such as a company's sales literature, advertisements, and

other promotional materials may be probative to the question. *See Streetsurfing LLC v. United

States*, 38 CIT __, __, 11 F. Supp. 3d 1287, 1292, 1301–02 (2014) ("Plaintiff markets its

waveboards as 'a new sport that combines the natural fluidity of surfing with the smooth

maneuverability of snowboarding and skating into one new action sport known as Street

Surfing.' . . . As demonstrated by Streetsurfing's sales literature and instructional DVD packaged

with the merchandise, users with greater skill are able to ride the waveboards with greater speed

and a higher degree of precision, on more uncertain terrain (e.g., hills and sidewalks), and may

even become proficient enough to perform 'tricks' and 'stunts' similar to those performed using

a skateboard. Skill is required for a rider to take full advantage of the articles covered by

HTSUS Heading 9506, and the presence of this element further favors classification of plaintiff's

---

Ruling Letters unhelpful, however, because they do not address the proper meaning of "in the
same pattern." Accordingly, these Ruling Letters are not relevant to the construction of
subheading 6912.00.39 and will not be considered in this action.

waveboards under this heading, as sporting goods or articles for general physical exercise or

athletics." (citations omitted)).


IV.    **WHETHER THE CONTESTED ARTICLES ARE "IN THE SAME PATTERN" AND THUS COVERED UNDER SUBHEADING 6912.00.39**

A.  **Coordinating Design Characteristics**

While the parties agree that the contested articles are stoneware ceramic mugs and cups,

they disagree on whether the articles exhibit the same shape, color, and decoration.  For

defendant, articles found under the "Cancun" trademark in Marck's catalog are characterized

exclusively by "tableware and fourteen mugs offered in 'seven vibrant solid colors,' namely

crimson red, black, cobalt blue, light blue, orange, yellow[,] and green in a vitrified finish."

Def.'s Br. 8 (citing Def.'s Br., Ex. 6 at 2, 25–28 ("ITI Catalog")).  Further, according to

defendant, only those items that are of the same color designed to be used with "Cancun"

trademarked merchandise are in the same pattern.  *See* Def.'s Br. 12 ("In order to be considered

in the same 'Cancun pattern,' the mugs must not only exhibit a matching solid color and vitrified

finish, but also be designed to be used in conjunction with a 'Cancun' specified set." (citation

omitted)).  Sixteen of the contested items satisfy this criteria and therefore, it is undisputable that

they are in the same pattern as other items, of the same color, that are "Cancun" trademarked.

Defendant, however, argues that seventy-seven of the contested mugs are not offered for sale in

the same pattern as any of those identified by Marck as part of the "Cancun" trademarked line

because they are not available in one of the seven solid "Cancun" trademark colors and in a

vitrified finish.  Rather, these contested mugs, it claims, appear in (1) non-"Cancun" trademark

solid colors such as teal, green, plum, salmon, pink, purple, burgundy, white, charcoal, lavender,

and gray, (2) two-tone color patterns, and (3) special finishes such as matte, a marble style, and a

speckled style. *See* Def.'s Br. 9; *see also infra* App. B.

Because plaintiff argues that there is such a thing as a "Cancun" collection that is defined

by "bright bold colors and round rim shapes," it maintains that all of the contested articles

exhibit a design that "coordinates" with that of the "Cancun" trademarked dinnerware line. *See*

Pl.'s Br. 18; *see also infra* App. B. To support its position, plaintiff provided affidavits from Dr.

John Conrad ("Dr. Conrad") and Curtis E. Fahnert ("Mr. Fahnert"), each of whom independently

evaluated the contested mugs and cups at issue in this case.[16] Based on their evaluations, both

---

[16]     Defendant does not object to the proffered experts' qualifications.
        Dr. Conrad is a ceramics researcher who worked as a ceramics professor for thirty years.
App. 3 to Pl.'s Br. in Supp. of Mot. for Summ. J., Aff. of Dr. John Conrad 1 ("Conrad Aff.").
His education consists of a Bachelor of Science in Art from Indiana's Teachers College in 1958,
a Masters of Fine Arts (majoring in ceramics) from Carnegie Institute of Technology, now
Carnegie Mellon University, in 1963, and a Doctorate of Education with a focus on "glass to clay
fusion" from the University of Pittsburgh in 1970. Conrad Aff. 1, 2. Dr. Conrad worked as an
Adjunct Instructor at Carnegie Mellon from 1961 to 1964 and then later became a Professor of
Fine Arts at Mesa College, where he developed a ceramic program and served as Chairman of
the Art Department from 1980 to 1982 and 1985 to 1988. *See* Conrad Aff. 1, 2. From 2001 to
2003, he served as an Adjunct Emeritus Ceramic Professor. Conrad Aff. 2. Additionally, he was
granted "Infinite status" as a Guest Professor at Luxun Academy of Fine Arts in Shenyang,
China, and consulted for several companies, including American Cement Corporation in
Riverside, California, KD Corporation in Dallas, Texas and Seattle, Washington, and Baby
Keepsakes in Thousand Oaks, California. Conrad Aff. 2, 3. Dr. Conrad's publications include
"the first books on ceramics techniques and formulas that are still used as a reference in the
industry," and "nine books on ceramic techniques and formulas." Conrad Aff. 3–4.
        Mr. Fahnert is an industrial ceramic designer with a Bachelor's degree obtained from the
New York State School of Ceramics at Alfred University in 1951. App. 2 to Pl.'s Br. in Supp. of
Mot. for Summ. J., Aff. of Curtis E. Fahnert 1 ("Fahnert Aff."). During the early years of his
career, he designed the shape of a product at the American Ceramic Products in Santa Monica,
helped build "the Santa Clara Pottery Plant from concept to full production," served as the
Liaison between different departments at Homer Laughlin China Company, and supervised work
at Canonsburg Pottery. *See* Fahnert Aff. 1–2. Thereafter, Mr. Fahnert spent the following
twenty-three years working as the Assistant to the Art Director for Royal China Co. Fahnert Aff.
2. He is now retired. Fahnert Aff. 1.

experts affirmed in their affidavits that the contested articles coordinated in shape and color with those articles that are part of the "Cancun" dinnerware line.[17]

Because this is a classification case, the other record evidence includes the physical samples of certain contested articles and each tableware piece offered in the cobalt blue color, which were provided by plaintiff to the court. *See* Pl's Demonstrative Exs.; *infra* App. A; *Mattel*, 926 F.2d at 1120; *Lerner N.Y., Inc. v. United States*, 37 CIT __, __, 908 F. Supp. 2d 1313, 1318 (2013); *Springs Creative Prods. Grp. v. United States*, 37 CIT __, __, Slip Op. 13-107, at 19 (2013) ("[S]amples are potent witnesses and have great probative effect respecting the purpose for which they are designed." (citing *Janex Corp. v. United States*, 80 Cust. Ct. 146, 148, C.D. 4748 (1978))).

In addition, before the court are (1) the sales catalogs of the manufacturer, Huaguang, and the two sellers, Marck and its affiliate International Tableware Incorporated ("ITI"), and (2)

---

[17]      As part of Dr. Conrad's assessment, he concludes that there are twenty-two mugs and cups with shapes consistent with the "Cancun" trademarked items and that each of those shapes are available in colors that coordinate with at least one of the seven solid "Cancun" colors. *See* App. 3 to Pl.'s Br. in Supp. of Mot. for Summ. J., Aff. of Dr. John Conrad 6–17 ("Conrad Aff."); Supplemental Aff. of Dr. John W. Conrad ¶ 3 ("Conrad Supplemental Aff."). Both Dr. Conrad and Mr. Fahnert found that each of the twenty-two styles have a round rim shape consistent with that of the "Cancun" collection. Conrad Aff. ¶ E; App. 2 to Pl.'s Br. in Supp. of Mot. for Summ. J., Aff. of Curtis E. Fahnert ¶ E ("Fahnert Aff."). With respect to color, Dr. Conrad and Mr. Fahnert assert that the "Cancun" collection is characterized by "bright, bold colors" and that each of the contested mugs exhibits this unified color scheme. Conrad Aff. ¶ E; Fahnert Aff. ¶ E. Dr. Conrad further identifies the "Cancun" color or colors with which each of the ninety-one contested mugs and cups coordinates. Conrad Supplemental Aff. ¶ 3 ("Because of the careful selection of colors applied to the particular shapes defining the cancun pattern, it is readily apparent to me and it is my professional opinion that each of the mugs or cups identified in Exhibit 1 and its appendix, color coordinates with and complements the specific color offerings of the cancun dinnerware set as identified in column 8 [of the Catalog Corresponding Dinnerware Pattern Color Codes]."). For example, the "Heartland Bistro" mug in burgundy with an almond trim, identified as 5176-43-07C, coordinates with the "Cancun" trademarked articles in red and yellow, and the "El Grande" mug in green camouflage, identified as 81015-901, coordinates with the "Cancun" trademarked items in black and green. *See* Conrad Supplemental Aff., Ex. 1 at 3, 9; *see also infra* App. B, column 3, row 3, *and* column 1, row 1.

enlarged images of each individual contested mug and cup.  *See* Def.'s Br., Ex. 10 ("Huaguang

Catalog"); Marck Catalog; ITI Catalog; Supplemental Aff. of Christopher Miller ("Miller

Supplemental Aff."), Ex. 1; *infra* App. B.

    The court has conducted its own examination of this evidence with respect to the

uncontested and contested articles claimed by plaintiff's experts to each coordinate and

complement one another in design characteristics (i.e., shape, color, and decoration), and finds

that seventy-five of the contested cups and mugs do not coordinate in shape, color, and

decoration with those items advertised under the "Cancun" trademark and thus are not "in the

same pattern."  *See infra* App. B; TCS REPORT 100.

    With respect to the proffered testimony of plaintiff's witnesses, Dr. Conrad and Mr.

Fahnert, it is important to keep in mind the role of experts in court cases.  To accept expert

testimony as admissible under Rule 702 of the Federal Rules of Evidence, the court must find

that (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of

fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on

sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods;

and" (4) "the expert has reliably applied the principles and methods to the facts of the case."

FED. R. EVID. 702.  That is, in order for an expert witness's testimony to be admissible, it must

be reliable, relevant, and helpful to the trier of fact.  While expert testimony can be useful for

"explaining to [the trier of fact] what they otherwise could not understand," it is not needed or

useful where the question at issue is one that a person of usual discernment could decide and

where the subject of expert testimony "can and does speak for itself."  *See Paris Adult Theatre I*

*v. Slaton*, 413 U.S. 49, 56 & n.6 (1973) (quoting *United States v. Wild*, 422 F.2d 34, 36 (2d Cir.

1969)) (internal quotation marks omitted) ("This is not a subject that lends itself to the traditional

use of expert testimony.  Such testimony is usually admitted for the purpose of explaining to lay

jurors what they otherwise could not understand. . . . The films, obviously, are the best evidence

of what they represent."); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1354

(Fed. Cir. 2007) ("The district court found her testimony unhelpful to the jury, and not an

appropriate subject for expert evidence . . . . The district court did not abuse its discretion in

concluding that the jury was fully capable of understanding those materials without expert

assistance and that Dr. Hendrix's testimony should have been excluded." (citing *Gen. Elec. Co.*

*v. Joiner*, 522 U.S. 136, 141 (1997))); *Warner-Lambert Co. v. United States*, 28 CIT 939, 947

n.7, 341 F. Supp. 2d 1272, 1278 n.7 (2004), *aff'd*, 425 F.3d 1381 (Fed. Cir. 2005).

Thus, although Dr. Conrad and Mr. Fahnert may well be experts in ceramic technique

and design, their testimony is nonetheless not helpful to the court and thus inadmissible.  As a

result, their testimony will not be considered by the court.  This is primarily because Mr.

Fahnert's and Dr. Conrad's testimony, that all of "the mugs and cups clearly have the same

design characteristics including bright, bold colors and a round rim shape," could apply to

countless items that surely do not coordinate with the merchandise at issue.[18]  *See* App. 2 to Pl.'s

Br. in Supp. of Mot. for Summ. J., Aff. of Curtis E. Fahnert ¶ E ("Fahnert Aff."); App. 3 to Pl.'s

Br. in Supp. of Mot. for Summ. J., Aff. of Dr. John Conrad ¶ E ("Conrad Aff.").  Moreover, a

person of usual discernment does not need the assistance of an expert to make a decision of

whether dinnerware items are in the same pattern.  Were this not the case, an expert would be

needed to accompany each shopper that enters a housewares store.

---

[18]     Remarkably, each expert chose exactly the same words to express his opinion.
*See* App. 2 to Pl.'s Br. in Supp. of Mot. for Summ. J., Aff. of Curtis E. Fahnert ¶ E ("Fahnert
Aff."); App. 3 to Pl.'s Br. in Supp. of Mot. for Summ. J., Aff. of Dr. John Conrad ¶ E ("Conrad
Aff.").  No doubt, a human example of Vulcan mind meld. *See Star Trek: Dagger of the
Mind* (NBC television broadcast Nov. 3, 1966).

Also, the court finds that these experts have not reliably applied any principles and methods to the facts of this case.  That is, the testimony of both Mr. Fahnert and Dr. Conrad is simply incredible.  Both witnesses assert, for instance, that the "Cancun" trademarked cup in a cobalt blue color, identified as 39-04, and the "green" colored speckled mug, identified as 803-474/4715, "color coordinate[] with and complement[] the specific color offerings" of each other. *See* Supplemental Aff. of Dr. John W. Conrad ¶ 3, Ex. 1 at 2, line 12; Fahnert Aff. ¶ 9; Conrad Aff. ¶ 9; Miller Supplemental Aff., Ex. 1, at 2, line 12.  The briefest examination of these two items demonstrates that this is not the case and that no reasonable fact-finder could conclude otherwise.[19]  *Compare infra* App. A & n.29, *with infra* App. B, column 1, row 2.

Thus, because the affidavits of Dr. Conrad and Mr. Fahnert will not be considered by the court, the only probative evidence on the record as to whether the contested cups and mugs are in the same pattern as "Cancun" trademarked items are (1) the sales catalogs of Huaguang, Marck, and ITI, (2) the images of each individual contested cup and mug, and (3) the physical samples of certain contested items and each tableware piece offered in the cobalt blue color.  *See* Huaguang Catalog; Marck Catalog; ITI Catalog; Miller Supplemental Aff., Ex. 1; Pl.'s Demonstrative Exs.; *infra* App. B.

The purpose of U.S. Note 6 is to limit tariff treatment by giving a preferential rate to only certain tableware.  This limitation is made by drawing a distinction between (1) tableware that is sold individually, and (2) tableware in the same pattern that is designed to be used together as sets.  The legislative history to subheading 6912.00.39 indicates that Congress intended that items in the same pattern coordinate with respect to color, design, and decoration.  *See* TCS

---

[19]        This is a point fairly made by the Marx Brothers in *Duck Soup*: "Well, who you gonna believe?  Me or your own eyes?"  *See* DUCK SOUP (Paramount Pictures 1933).

REPORT 100.  An examination of the merchandise at issue makes it clear, however, that, here,

color is not only an important characteristic, but is largely determinative of whether two items

coordinate together.  Defendant makes this point in its papers.  *See* Def.'s Br. 8–9 ("As such, to

prevail on its preferred classification[,] Marck . . . would have to prove that each of the contested

mugs is designed to be used with a matching 'Cancun' set containing all pieces required by

Additional [U.S.] Note 6.  The evidence adduced during discovery, however, establishes

otherwise. . . . Thus, 'Cancun' refers to seven distinct dinnerware sets each consisting of pieces

tied together by their own unique matching color and finish offered together.  For example, the

cobalt patterned 'Cancun' set is comprised of table and drinkware pieces including mugs, plates,

bowls, platters, a sugar, and a creamer tied together by a matching solid cobalt color and vitrified

finish. . . . The 'Cancun' dinnerware line consists of seven specific solid colors and a specific

vitrified finish.  Seventy-seven (77) of the contested mugs do not fit within the 'Cancun'

parameters as they are either not in one of the seven specific 'Cancun' colors or the specific

vitrified finish.").

     While it need not always be the case that items of tableware be of the same color to be in

the same pattern, in this case, the various colors are so strikingly different that they cannot be

said to coordinate with one another.  *See infra* App. B.  Therefore, even though Marck has

trademarked all of the colors under the "Cancun" name, this act has not transformed items of

various strong colors into a single pattern.

     Also, an item of tableware cannot be a member of several patterns.  It can be a member of

just one.  Marck characterizes each of the ninety-one contested articles as being part of the same

pattern as those advertised under the "Cancun" copyright by arguing that each cup and mug

shares complementary or harmonious colors.  It is apparent, however, that U.S. Note 6 is not so

broad as to encompass this kind of mixing and matching, and that, with respect to the

merchandise at issue, only those items that are (1) of the *same* color, (2) share similar design

characteristics (i.e., shape and decoration), and (3) were "designed to be used together as sets"

are "in the same pattern."  *See* TCS REPORT 100.  Put another way, even though an item may

share a similar shape with "Cancun" trademarked items, a cup or mug cannot be said to be "in

the same pattern" as "Cancun" trademarked merchandise for purposes of classification under

HTSUS subheading 6912.00.39 unless it also shares the same color as those items advertised

under the "Cancun" trademark.


### B.  Sixteen of the Mugs and Cups Are Designed to Be Used with a Set

While finding whether an article is part of a pattern is the first step in determining

whether it is classified under HTSUS subheading 6912.00.39, even items in the same pattern are

not properly classifiable under the subheading unless they are also "available in specified sets."

*See* U.S. Note 6(a).  As noted, determining whether articles were designed to be used together as

a set requires the court to determine the manufacturer's intent.  *See* TCS REPORT 100 ("The

phrase 'in the same pattern' in the headnotes to this subpart refers to articles in coordinated

shapes, colors, or decorations, including plain white articles, *designed to be used together as*

*sets*." (emphasis added)).  While witness testimony and affidavits may aid in determining the

intent of the designers, other evidence, such as advertising and marketing materials, and web

pages may also instruct the court's assessment of how the merchandise was designed to be used.

Based on the sales literature of the manufacturer and sellers, the court finds that only sixteen of

the ninety-one articles were designed to be used together: 8286-02, 839-02, 87168-02, 867-02,

81015-02, 81950-02,[20] 8286-04, 839-04, 87168-04, 81015-04, 8286-05, 839-05, 87168-05,

81015-05, 81376-05, and 87168-06.


### 1. Affidavits

Affidavits and other probative evidence submitted by the parties may inform a court's

determination of whether articles were designed to be used together as a set when the documents

specifically address the manufacturer's intent.  To support its claim that all ninety-one contested

articles were designed for use together with items under the "Cancun" trademark, plaintiff relies

on the following testimony from an affidavit of Marck's Vice-President and Chief Financial

Officer, Christopher Miller ("Mr. Miller"):

> [T]he Cancun pattern is an offering of bright bold colors and shapes coordinated
> together in a unified design.  These trademarked items [(i.e., trademarked as
> "Cancun")] were, to my personal knowledge, designed by myself and other
> Marck personnel, with the assistance of the supplier, [Huaguang], using
> complementary and coordinated shapes and colors on the basis of well recognized
> artistic principles to create a unified theme for the identification of these products
> as a unified set, pleasing to the eye.

---

[20]      Although the specific series and color code 81950-02, i.e., the "Cleveland Mocha
Mug" in a white color, does not appear under the "Cancun" trademark in Marck's catalog, it is
clear that the white "Cleveland Mocha Mug" is, in fact, featured and offered for sale as part of
the "Cancun" collection in its catalog.  *See* Marck Catalog at 53.  A close examination of its
catalog reveals that it offers for sale both a white-colored "Cleveland Mocha Mug" and a natural-
colored "Cleveland Mocha Mug" as part of the "Cancun" collection, but labels the two different
colored items with the code "81950-01," i.e., that they are both offered for sale in the color
natural.  *See* Marck Catalog at 53.  Following a visual comparison with other similarly colored
"Cancun" trademarked articles in the Marck catalog that are assigned the color code "01," it is
apparent that the white-colored "Mocha Mug" displayed on page 53 of Marck's catalog was
inadvertently labeled with the color "01," and that it is, in fact, the white colored "Cleveland
Mocha Mug" 81950-02.  Indeed, plaintiff agrees that the contested article 81950-02 is featured
by Marck on page 53 of its catalog as part of the "Cancun" trademarked collection.  *See* Def.'s
Br., Ex. 4 at 10.

*See* Miller Supplemental Aff. ¶ 3; Pl.'s Resp. to Def.'s Mot. for Summ. J. 10 (ECF Dkt. No. 83)

("Pl.'s Resp. Br.").  Even though this affidavit does not specifically address the intent behind the

design of the ninety-one contested items, plaintiff insists that it supports its claim that the items

at issue were designed to be used as part of "Cancun" trademarked sets.  *See* Pl.'s Resp. Br. 10.

       The court finds that the affidavit is not probative with respect to the issue of intent.  That

Marck influenced the design of the "Cancun" trademarked articles found in its catalog (including

the sixteen mugs and cups that are concededly part of the "Cancun" line) does not lead to the

conclusion that Marck designed the articles in the "Cancun" line to be used together as a set with

each of the remaining seventy-five contested mugs and cups (i.e., the non-"Cancun"-trademarked

items).  That is, Mr. Miller's affidavit speaks only to the process of how the particular "Cancun"

line of merchandise was designed.  He does not, however, identify which, if any, of the seventy-

five cups and mugs that were not advertised by Marck as being part of the "Cancun" collection

were designed to coordinate with the "Cancun" trademarked line.  Although Mr. Miller's

testimony is that the "Cancun" trademark items were designed by himself and others in such a

way that each piece was complemented and coordinated, he fails to identify, in either of his

affidavits, any of the seventy-five remaining contested items as actually being under the

"Cancun" trademark.  *See* Miller Supplemental Aff. ¶ 3; Miller Aff. ¶¶ 15–36.  Thus, Mr.

Miller's affidavits do not provide relevant evidence because they do not raise or settle a question

of fact with respect to whether Marck designed each of the contested mugs and cups to be used

together as part of the "Cancun" collection.

### 2.   Sales Literature

Packaging, advertisements, and catalogs are among the forms of sales literature that may also help inform the court's decision as to whether articles were intended to be used together as sets and are thus properly classified under HTSUS subheading 6912.00.39. *See Streetsurfing*, 38 CIT at __, 11 F. Supp. 3d at 1292, 1301–02. Therefore, it can be assumed that items intended to be used together as a set will be offered for sale in a way that reveals that intention. Furthermore, the grouping of articles, either by trademark,[21] name, or item number may also be demonstrative of the manufacturer's design purpose. *See, e.g.*, *Household Mfg. Co. v. United States*, 62 Cust. Ct. 198, 204–05, 296 F. Supp. 323, 328 (1969); *Imports, Inc. v. United States*, 55 Cust. Ct. 506, 507, Abs. 69681 (1965). Further, it is worth noting that the facts relating to the sales literature are not in dispute.

The relevant sales literature here includes the catalogs of Huaguang, ITI, and Marck. Huaguang (the manufacturer) does not feature the "Cancun" trademark line anywhere in its catalog of merchandise. *See* Huaguang Catalog. Although there are ninety-one contested mugs and cups, the contested items are of twenty-two different mug and cup styles. Huaguang features only ten (the ten style numbers are 1015, 7168, 286, 39, 481, 67, 1209, 3414, 7101, and 81015) of the twenty-two mug and cup styles in the "Coffee Mug Series" of its catalog and none of these ten styles appear in the "Dinner Set Series" displayed in its catalog. *See* Def.'s Br., Ex. 11 at 3–4; Huaguang Catalog at 4, 8, 16, 18, 21.

ITI's 2009–2010 catalog, however, includes a "Cancun" trademark section in seven solid colors (crimson red, black, cobalt blue, light blue, orange, yellow, and green) with a vitrified

---

[21]   While the act of assigning the same trademark to various items cannot serve to make them in the same pattern for purposes of classification, it can reveal a seller's intention.

finish.  *See* ITI Catalog at 1, 2, 25–28 (listing "Cancun" next to the description "Seven Vibrant

Solid Colors" in the catalog's Table of Contents).  The catalog includes the phrases "solid

colors"[22] and "rolled edge and narrow rim" under the "Cancun" heading.  ITI Catalog at 26.

Although it depicts all of the tableware pieces under the "Cancun" trademark, the sugar and

creamer articles are available only in the light blue and cobalt blue colors.  *See* ITI Catalog at

26–28 (stating that the sugar bowl and creamer are "available in Cobalt Blue and Light Blue

only").  Further, the ITI catalog features only ten of the ninety-one contested mugs and cups

within the "Cancun" dinnerware line.  *See* ITI Catalog at 26–28.  These ten articles featured

under the "Cancun" trademark within the ITI catalog include four cobalt blue articles (81015-04,

8286-04, 839-04, and 87168-04), five black articles (81376-05, 81015-05, 8286-05, 839-05, and

87168-05), and one light blue article (87168-06).  As to the remaining eighty-one contested cups

and mugs, ITI displays only six others (8286-02, 839-02, 87168-02, 867-02, 81015-02, and

81950-02), all white articles, elsewhere in its catalog, under a different trademark name.  *See* ITI

Catalog at 28 (displaying the six white articles in a section of its catalog titled "European White

Mugs & Saucers").  Thus, the remaining seventy-five articles, most of which are either multi-

colored with different colored interiors and exteriors, characterized by a special matte, marble, or

speckle finish, or decorated with a camouflage pattern are not featured anywhere in ITI's catalog.

    For its part, Marck's 2006 catalog has photographs that exhibit each of the contested

articles, as well as the "Cancun" trademarked cups and mugs.  *See* Marck Catalog.  Unlike ITI's

catalog, it displays the "Cancun" collection in nine solid colors, rather than seven: the seven

colors exhibited in ITI's catalog, plus white and natural.  *See* Marck Catalog at 49.  Marck's

---

[22]        It is worth noting that several of the items that plaintiff and its experts insist
coordinate with the "Cancun" trademarked line are not solid colors.  *See infra* App. B.

catalog does not, however, offer certain "Cancun" trademark tableware pieces (i.e., 10 ¼ inch

plates, 6 ⁵/₈ inch plates, 7 inch bowls, 4 ¾ inch 4 ounce fruit bowls, 13 ¼ inch platters, 10 inch

bowls, sugar bowls with lids, and 14 ounce creamers) for sale together with any of the contested

articles that are not featured as part of the "Cancun" collection.  *See* Marck Catalog.  Marck's

catalog does, though, display sixteen of the ninety-one contested cups and mugs within the

"Cancun" section: six white articles (8286-02, 839-02, 87168-02, 867-02, 81015-02, and 81950-

02), four cobalt blue articles (8286-04, 839-04, 87168-04, and 81015-04), five black articles

(8286-05, 839-05, 87168-05, 81015-05, and 81376-05), and one light blue article (87168-06).

*See* Marck Catalog at 49–53.  In other words, although Marck's catalog features each of the

ninety-one contested cups and mugs, it does not offer for sale the "Cancun" trademarked

tableware pieces as displayed by ITI in its catalog of merchandise, and it depicts only sixteen of

the contested cups and mugs under the "Cancun" trademark.

     The court finds that catalogs provide an indication of whether the articles were designed

to be used with a specified set.  It further finds the undisputed facts establish that the "Cancun"

collection does not appear anywhere in the manufacturer Huaguang's catalog and that only ten of

the twenty-two mug and cup styles of the ninety-one contested articles are displayed in the

catalog, none of which are featured in its "Dinnerware Set Series" section.  *See* Huaguang

Catalog at 4–21, 37–51.  Further, just ten of the contested mugs and cups are displayed in the

same section as the "Cancun" trademarked tableware pieces (i.e., the plates, bowls, cups,

platters, sugar bowls, and creamers) in ITI's catalog, and only sixteen are featured in a similar

manner by Marck in its own catalog.  *See* ITI Catalog at 26–28; Marck Catalog at 49–58.  It is

therefore significant that none of the contested mugs and cups in Huaguang's catalog, eighty-one

of the contested mugs and cups in ITI's catalog, and seventy-five of the contested mugs and cups

in Marck's catalog, are neither (1) categorized anywhere under the same trademark as the

"Cancun" collection, nor (2) displayed within the same section as the "Cancun" dinnerware line.

Next, the court finds that matching style code numbers assigned to articles is informative

as to whether items were "designed to be used together as sets." *See* TCS REPORT 100.  For

example, in Marck's catalog, the number "8" is added to the front of each of the sixteen articles'

style code numbers when they are displayed within the "Cancun" collection. *See* Marck Catalog

at 49–53.  In other words, these sixteen articles, when featured under other trademarked

collections in Marck's catalog, are designated different style codes (i.e., the same style code but

with the number "8" removed as the first digit) than when they are displayed within the

"Cancun" trademark section of its catalog (i.e., the same style code but with the number "8"

added as the first digit).  Thus, Marck's deliberate use of matching style codes for certain

articles, when featured in the "Cancun" trademark section of its catalog, suggests that these items

were intended to be part of the "Cancun" line.

Accordingly, because the undisputed facts demonstrate that Huaguang's sales literature

does not feature the "Cancun" trademark dinnerware line, and the catalogs of ITI and Marck fail

to display seventy-five of the ninety-one contested mugs and cups under the "Cancun" trademark

within the same section as the "Cancun" dinnerware line, it appears that these articles were not

intended to be used as part of the "Cancun" set.  This conclusion is further bolstered by the fact

that Marck assigns articles depicted in the "Cancun" section of its catalog a unique style code

(i.e., by adding the number "8" to the front of each item's style code) to denote that they are

"Cancun" trademarked items.  Therefore, the court finds that the undisputed evidence establishes

that, because only sixteen of the contested mugs and cups appear under the "Cancun" trademark

within the "Cancun" section of Marck's catalog with the similar unique identifying style code,

the remaining seventy-five mugs and cups were not designed to be used together with those

articles under the "Cancun" trademark.


### 3.   Conclusion

In light of the undisputed evidence provided by the sales literature and lack of any

probative evidence to the contrary, the court finds that the question, of whether the ninety-one

contested articles were designed to be used together as sets with "Cancun" trademarked

merchandise, is ripe for summary judgment.  This is because the sales literature, which is the

only probative record evidence on the question, compels a conclusion to which no reasonable

mind could differ.  That is, based on the evidence provided by the sales literature, there is no

genuine dispute as to any material fact leading to the conclusions regarding which contested cups

and mugs were designed to be used together as sets with the "Cancun" trademarked collection.

Therefore, the court finds that seventy-five of the contested articles were not designed to be used

together as sets with the "Cancun" trademarked merchandise found in Marck's catalog, and that

sixteen of the contested mugs and cups, those that are advertised in the "Cancun" section of

Marck's catalog and assigned matching style codes (i.e., by adding the number "8" to the front of

each item's style code), were indeed designed to be used together as sets with "Cancun"

trademarked merchandise in the same pattern.  Of these sixteen cups and mugs, six of them are

colored white (8286-02, 839-02, 87168-02, 867-02, 81015-02, and 81950-02), four are colored

cobalt blue (8286-04, 839-04, 87168-04, and 81015-04), five are colored black (8286-05, 839-

05, 87168-05, 81015-05, and 81376-05), and one is colored light blue (87168-06).  In other

words, there is undisputed evidence that these sixteen articles exhibit coordinated colors, shapes,

and decorations with those articles featured as part of the "Cancun" trademark, and based on

their placement in the sales literature, were designed to be used together with the "Cancun"

trademarked merchandise.  Thus, the court finds that, to the extent that they are offered in the

same color as other "Cancun" trademarked merchandise and are thus in the same pattern, these

sixteen items were offered for sale as a set.  Accordingly, these sixteen articles have satisfied the

first factor needed for them to be found to be properly classified under subheading 6912.00.39 as

"available in specified sets."


V.      THE PROPER CLASSIFICATION OF THE MERCHANDISE

        A.  **Five Mugs and Cups Are Properly Classified Under HTSUS Subheading
            6912.00.39**

        With respect to the sixteen mugs and cups found to be "in the same pattern," only five of

them (8286-04, 839-04, 87168-04, 81015-04, and 87168-06) are properly classifiable under

HTSUS subheading 6912.00.39 as "available in specified sets" pursuant to GRI 1 because

subheading 6912.00.39 fully describes these articles.  That is, because these five articles are

*prima facie* classifiable as "available in specified sets," no analysis beyond GRI 1 is necessary.

As noted, subheading 6912.00.39 requires that articles classified thereunder be (1) "tableware,

kitchenware, other household articles and toilet articles, other than of porcelain or china," (2)

ceramic, and (3) "in the same pattern," and it also requires that (4) the specified set contain each

of the articles listed in U.S. Note 6(b), which (5) must have an aggregate value greater than

$38.00.  *See* U.S. Note 6(a), (b).  The record establishes, however, that the "Cancun" trademark

dinnerware items imported by plaintiff that are made of ceramic and satisfy the specifications of

U.S. Note 6(b), and as a whole, are valued at over $38.00, only constitute a "set" under the

statute in two colors: cobalt blue and light blue.

Cobalt blue and light blue are two of the seven basic "Cancun" colors and each of the required dinnerware items are offered in cobalt blue and light blue. As previously noted, defendant concedes that the "Cancun" articles in cobalt blue and light blue satisfy the specifications set forth in U.S. Note 6(b), and it does not dispute that the merchandise at issue is ceramic tableware. Although the other eleven articles, each of which were either in a black or white color, were found to be in the same pattern as other articles of the same color claimed by Marck to be included under the "Cancun" trademark, they lack certain matching enumerated dinnerware items (i.e., a sugar and creamer) of the same color (i.e., in the same pattern). *See* ITI Catalog at 26 (stating that the sugar bowl and creamer are "available in Cobalt Blue and Light Blue only"). That is, because, here, only items of the same color are in the same pattern, and because the sugar and creamer dinnerware items are offered for sale in only two colors (i.e., cobalt blue and light blue), it is only those colors that constitute a "set" for purposes of U.S. Note 6(b).

As explained previously, matching color is determinative (although, alone, not dispositive) in resolving the question of whether tableware items are "in the same pattern." Thus, even though contested articles may coordinate with other articles of the same color, they are available in a specified set only if each of the enumerated dinnerware articles in U.S. Note 6(b) are also offered for sale in the same color. Because all of the articles required by U.S. Note 6(b) to qualify for special treatment under the HTSUS—and be classified as "available in specified sets" under subheading 6912.00.39—are offered for sale in only two colors, cobalt blue and light blue, only those contested articles found to be under the "Cancun" trademark that are colored cobalt blue and light blue are properly classified under subheading 6912.00.39 as "available in specified sets."

Thus, these five mugs and cups (four of which are colored cobalt blue, and the other, which is colored light blue[23]) that are "in the same pattern" satisfy the provisions for classification under subheading 6912.00.39, "available in specified sets," and are classified therein.  As noted, these mugs and cups are identified by the following item numbers (when advertised in the "Cancun" section of Marck's catalog): 8286-04, 839-04, 87168-04, 81015-04, and 87168-06.

### B.  Eighty-six Mugs and Cups Are Properly Classified Under Subheadings 6912.00.44 and 6912.00.48

Customs classified sixty-one of the ninety-one contested articles under HTSUS subheading 6912.00.44, "Mugs and other steins," and thirty of the ninety-one contested articles under subheading 6912.00.48, "Other."  *See* Niceton Invoices.  The court, by this opinion, has found that five of the ninety-one mugs are properly classified under HTSUS subheading 6012.00.39, "available in specified sets."  With respect to the eighty-six remaining articles, because each item is *prima facie* classifiable under one of the following two subheadings, the court finds that Customs' classification under HTSUS subheadings 6912.00.44 and 6912.00.48 is proper.

Although plaintiff does not contest Customs' method of distinguishing cups from mugs, the court is not relieved of its obligation to independently determine whether Customs'

---

23      As previously explained, the "light blue" color described in ITI's catalog and the "ocean blue" color listed in Marck's catalog reference the same color.  Thus, article 87168-06, which appears under the "Cancun" trademark section of Marck's catalog in the color ocean blue, is offered for sale in the same color as each of the enumerated dinnerware articles listed by U.S. Note 6(b).

classification of the contested mugs and cups in HTSUS subheadings 6912.00.44 and 6912.00.48

is indeed correct. *See Jarvis Clark*, 733 F.2d at 878.

The court has conducted an independent examination of the sample articles and contested

mugs, inspected the photographs and descriptions of the articles in the sellers' catalogs, and has

considered the definitions of the words "cups" and "mugs" as set forth earlier in this opinion.

*See Mattel*, 926 F.2d at 1120; *Simod*, 872 F.2d at 1578.  As a result, the court finds, pursuant to

GRI 1, that Customs correctly identified fifty-eight of the eighty-six remaining articles as mugs,

and therefore properly classified them as "Mugs and other steins" under the subheading

6912.00.44, which is an *eo nomine* provision.  The court also finds that Customs correctly

identified twenty-eight of the articles as cups, and therefore, applying GRI 1, holds that Customs

properly classified them under subheading 6912.00.48, which fully describes the remaining

articles.

Thus, the court concludes that fifty-eight of the eighty-six articles are mugs,[24] and

therefore properly classified under subheading 6912.00.44, and twenty-eight of the eighty-six

articles are cups,[25] and properly classified under subheading 6912.00.48 as "Other."

---

[24]     Specifically, the fifty-eight articles that are mugs fall under eleven style codes:
414 (Milwaukee Barrel Mug), 803 (Spokane Barrel Mug), 4110 (Denver Light-Weight Mug),
1209 (Santa Fe Campfire Mug), 212 (NY Barrel Mug), 3414 (Heartland C-Handle), 7101 (Titan
Mug), 7168 (3 Finger "C" Handle), 1015 (El Grande), 81015 (Cancun El Grande), and 617
(Boston Irish Mug).
        The fifty-eight mugs are individually identified under the following style and color code
combinations: 414-11, 414-43, 414-02, 803-RH6/H7, 803-474/4715, 803-4, 803-02/309, 803-5,
803-621/623, 4110-2, 1209-11, 1209-02/04, 1209-02/82, 1209-02, 212-02, 212-07, 3414-
02/11C, 3414-02/04C02, 3414-02/47MF, 3414-02/96C, 7101-11, 7101-02, 7101-43, 7168-25,
7168-02/04, 7168-64, 7168-23, 7168-26, 7168-30, 7168-04M, 7168-43, 7168-05M, 7168-84,
7168-02/11, 7168-36, 7168-11, 7168-23M, 7168-04/02, 7168-72, 7168-02, 7168-05, 1015-
05/02-05, 1015-67/02-67, 1015-11, 1015-02-11C, 1015-02/04, 1015-02/05, 1015-04/02, 1015-
67/02-67, 1015-07, 1015-04/02-96, 81015-901, 1015-02-96, 1015-04/04MF, 1015-05/02, 1015-
02, 1015-05, and 617-04.

## CONCLUSION

Based on the foregoing, it is hereby

ORDERED that defendant's motion for summary judgment is granted, in part, and

plaintiff's motion for summary judgment is granted, in part.  Judgment will enter accordingly.

Dated:          June 17, 2015
                New York, New York


                                            _____/s/ Richard K. Eaton_____
                                                  Richard K. Eaton

---

[25]          Specifically, the twenty-eight articles that are cups fall under eleven different style codes: 3476 (Heartland Bistro Cup), 481 (Canaveral Endeavor Cup), 1776 (Heartland Bistro Cup), 209 (Savannah Endeavor Cup), 1276 (Santa Fe Bistro Mug), 5176 (Heartland Bistro Cup), 286 (Houston Endeavor Cup), 39 (Tulsa Funnel Cup), 67 (Funnel Cup), 1376 (St. Paul Bistro Mug), and 1950 (Cleveland Mocha Mug).
          The twenty-eight cups are individually identified under the following style and color code combinations: 3476-07-05C, 3476-07-11C, 3476-07-43C, 481-02, 481-04, 481-02/232-02C, 481-02/233-02C, 1776-02/05C, 1776-02/04C, 209-RH6/H7, 1276-25, 5176-43-07C, 286-11, 286-02, 286-326/02-326C, 286-02/02MF, 286-237/02-237C, 286-43, 286-05, 39-02, 39-05, 39-02/11MF, 67-11, 67-43, 67-02/02MF, 67-02, 1376-05, and 1950-02.

## APPENDIX A[26]

### Cobalt Blue



|        | Sugar Bowl | Creamer |
|--------|------------|---------|

### Light Blue



---

[26]     Not depicted here is style 87168-04.  The physical sample was broken during Dr. William M. Carty's examination of the merchandise.  *See* Carty Aff., Images and Figures at 2, 8.

[27]     Style 81015-04.  *See* Pl.'s Representative Sample Marked T.

[28]     Style 8286-04.  *See* Pl.'s Representative Sample Marked C.

[29]     Style 839-04.  *See* Pl.'s Representative Sample Marked D.

[30]     *See* Pl.'s Ex. GG.

[31]     *See* Pl's Demonstrative Ex. X.

[32]     Style 87168-06.  *See* ITI Catalog at 28.

[33]     *See* ITI Catalog at 26.

[34]     *See* ITI Catalog at 26.

**APPENDIX B**[35]

**Examples of the Ninety-one Contested Cups and Mugs at Issue**



---

[35]     *See* Miller Aff., Ex. 1.

